### SANGER *v.* UPTON, ASSIGNEE.

1. Where, in a district court of the United States, a corporation was adjudged a bankrupt, an assignee appointed, and an order made that the balance unpaid upon the stock held by the several stockholders should be paid to him by a certain day, that notice of the order should be given by publication in a newspaper or otherwise, and that in default of payment he should collect the amount due from each delinquent stockholder, and it appearing that he had given the notice required, and that the defendant below had failed to make payment pursuant to the order, — *Held*, that the order was conclusive as to the right of the assignee to bring suit to enforce such payment.

2. The court pronouncing the decree of bankruptcy had jurisdiction and authority to make the order; and it was not necessary that the stockholders should have received actual notice of the application therefor. In contemplation of law, they were before the court in all the proceedings touching the corporation of which they were members.

3. It was competent for the court to order payment of the unpaid stock subscriptions, as the directors, under the instructions of a majority of the stockholders might, before the decree in bankruptcy, have done.

4. The capital stock of an incorporated company is a fund set apart for the payment of its debts.

5. As the company might have sued a stockholder for his unpaid subscription at law, the assignee succeeding to all its rights has the same remedy.

6. It appearing in evidence that two certificates of stock in blank as to the stockholder's name were issued and delivered to the plaintiff in error, that she had paid to the company all that was then payable, and received a dividend, and that her name was placed upon the stock list, she was estopped from denying her ownership.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This was an action of assumpsit, brought by Clark W. Upton,

as assignee in bankruptcy of the Great Western Insurance Company, against Mary C. Sanger, for the balance unpaid on her stock. The Bankruptcy Court made an order that the amount unpaid on the capital stock of the corporation should be paid to the assignee on or before Aug. 15, 1872, and, in default thereof, that the assignee proceed to collect the same; and that notice of this order be given to the stockholders by publication or otherwise. Notice was given by publication, and by mailing to each subscriber a copy of the order, with a demand for payment. Defendant below failing to pay, this suit was brought. The evidence offered on the part of the plaintiff below, and excepted to by the defendant below, is stated in the opinion of the court.

*Mr. H. S. Monroe* and *Mr. L. H. Bisbee* for plaintiff in error.

1. Plaintiff in error not bound by the order of July 5, 1872, as she was not before the court.

2. Under the evidence in the case, the plaintiff in error was not liable.

*Mr. L. H. Boutell* for defendant in error.

1. The District Court had authority to pass the order of July 5, 1872. Upon the bankruptcy of the company, its corporate powers, so far at least as they were necessary for the winding up of its affairs, were transferred to that court.

2. No notice to the stockholders of the application to the District Court for the assessment was necessary. *Ward* v. *Griswold Manuf. Co.*, 16 Conn. 593; *Ex parte Herodry*, 15 Ves. 498; *Ogilvie et al.* v. *Knox Co. Ins. Co.*, 22 How. 380; Angell & A. on Corp. (9th ed.) 599–604; *Sawyer* v. *Hoag*, 17 Wall. 610, 619.

3. An action at law is the proper remedy.

MR. JUSTICE SWAYNE delivered the opinion of the court.

Several errors are assigned and relied upon touching the admission of evidence and the instructions given to the jury.

We shall give our views of the case as it is presented in the record, so as to meet these objections without adverting specifically to any of them.

The original charter of the Great Western Insurance Company fixed its capital at $100,000. By an amendment of the

charter, the capital was increased to $5,000,000. · It became insolvent. A petition was filed against it in the District Court of the United States for the Northern District of Illinois ; and on the 6th of February, 1872, it was adjudged a bankrupt. On the 11th of April, 1872, the defendant in error was appointed its assignee in bankruptcy. Upon the application of the assignee, the District Court made an order that the balance unpaid upon the stock held by the several stockholders ·should be paid to the assignee on or before the fifteenth day of August, 1872; that notice of the order should be given by publication in a newspaper or otherwise; and that, in ·default of payment, the assignee should proceed to collect the amount due from each delinquent. · The assignee gave notice by publishing the order accordingly, and by mailing a copy, with a demand of payment, to 'each stockholder. The plaintiff in error was so notified. It was claimed that she was the owner of $10,000 of the stock, upon which it was alleged there was due sixty per cent. The original charter required the payment of five per cent of the capital stock, ·and that the balance should be secured in the manner prescribed. The amended charter is silent upon the subject. The stock certificates issued by the company set forth that twenty per cent was to be paid in four quarterly instalments of five per cent each, "the. balance being subject to the call of the directors as they may be instructed by the majority of the stockholders represented at any regular meeting."

This was a regulation of the company, and not a requirement of either the original or amended charter. It did not appear that any call was ever made by the directors, or authorized by the stockholders.

The plaintiff in error having failed to pay pursuant to the order of the court, this suit was instituted by the assignee.

The order was conclusive as to the right of the assignee to bring the suit. Jurisdiction was given to the District Court by the Bankrupt Act (Rev. Stat., sect. 4972) to make it. It was not necessary that the stockholders should be before the court when it was made, any more than that they should have been there when the decree of bankruptcy was pronounced. That decree gave the jurisdiction and authority to make the order. The plaintiff in error could not, in this action,

question the validity of the decree; and, for the same reasons, she could not draw into question the validity of the order. She could not be heard to question either, except by a separate and direct proceeding had for that purpose. She might have applied to the District Court to revoke or modify the order. Had she done so, she would have been entitled to be heard; but it does not appear that any such application was made. As a stockholder, she was an integral part of the corporation. In the view of the law, she was before the court in all the proceedings touching the body of which she was a member. In point of fact, stockholders in such cases can hardly be ignorant of the measures taken to reach the effects of the corporation. If they choose to rest supine until cases against them like this are on trial, they must take the consequences. Not having spoken before, they cannot be permitted to speak then, especially to make an objection which looks rather to the embarrassment and delay than to the right and justice of the case. A different rule would be pregnant with mischief and confusion. *Hall* v. *U. S. Ins. Co.*, 5 Gill, 484; *Sagory* v. *Dubois*, 3 Sandf. Ch. 510.

This court has applied the same rule to an order made by the comptroller of the currency, under the fiftieth section of the National Bank Act, appointing a receiver, and directing him to proceed to make collections from the stockholders of an insolvent bank. *Kennedy* v. *Gibson and Others*, 8 Wall. 505.

In that case it was said, "It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or any part, and, if a part, how much, should be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. Its validity is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him."

This principle was applied also in *Cadle, Receiver*, v. *Baker & Co.*, 20 Wall. 650.

It was competent for the court to order payment of the stock, as the directors under the instruction of a majority of the stock-

holders might, before the decree in bankruptcy, have done.. The former is as effectual as the latter would have been. It may, perhaps, be well doubted whether the stockholders would have voluntarily imposed such a burden upon themselves. The law does not permit the rights of creditors to be subjected to such a test. It would be contrary to the plainest principles of reason and justice to make payment by the debtor for such a purpose in any wise dependent upon his own choice. A court of equity has often made and enforced the requisite order in such cases. The Bankrupt Court possessed the same power in the case in hand. The order rests upon a solid foundation of reason and authority. *Ward* v. *The Griswold Manuf. Co.*, 16 Conn. 599; *Adler* v. *The Mil. Pat. Brick Manuf. Co. et al.*, 13 Wis. 61; *Sagory* v. *Dubois*, 3 Sandf. Ch. 510; *Man* v. *Pentz*, 2 id. 285.

A resolution or agreement that no further call shall be made is void as to creditors. 3 Sandf. Ch., *supra*. An agreement that a stockholder may pay in any other medium than money is also void as a fraud upon the other stockholders, and upon creditors as well. *Henry et al.* v. *Vermilion & A. R.R. Co.*, 17 Ohio St. 187. The owner of stock cannot escape liability by taking it in the name of his infant children. *Roman* v. *Fry*, 6 J. J. Mar. 634. Nor is it any defence to show that the holder took and held the stock as the agent of the corporation, to sell for its benefit. *Allibone* v. *Hager*, 46 Penn. St. 48.

The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it *bona fide* for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation, for their security. Unpaid stock is as much a part of this pledge, and as much a part of the assets of the company, as the cash which has been paid in upon it. Creditors have the same right to look to it

as to any thing else, and the same right to insist upon its payment as upon the payment of any other debt due to the company. As regards creditors, there is no distinction between such a demand and any other asset which may form a part of the property and effects of the corporation.   *Curran* v. *Arkansas*, 15 How. 308; *Wood* v. *Dummer*, 3 Mas. 308; *Slee* v. *Bloom*, 19 Johns. 474; *Briggs* v. *Penniman*, 8 Cow. 387; *Society, &c.* v. *Abbot*, 2 Beav. 559; *Walworth* v. *Holt*, 4 Myl. & C. 789; *Ward* v. *Griswoldville Man. Co.*, 16 Conn. 598; *Fowler* v. *Robinson*, 31 Me. 789; Angell & A. on Corp., sect. 600 and *post; Wright* v. *Petrie*, 1 Sm. & M. 319; *Nathan* v. *Whitelock*, 3 Edw. C. 215; 4 Am. Law Mag. 93.

The earliest authority upon the point under consideration is *Dr. Salmon* v. *The Hamborough Company*, decided in 1670. 1 Cas. in Ch. 204; 6 Viner's Abridg. 310, 311.   The bill in that case alleged that Salmon held a bond of the company of eighteen hundred pounds, given to him for lent money.   The company was incorporated, and had power to assess rates upon cloths, in which it dealt, "and, by poll on every member, to defray the charges of the company."  The company had imposed rates accordingly, — to wit, "4*s.* 6*d.* upon every white cloth exported, and divers others, — and thereby raised eight thousand pounds per annum," &c.

"And the bill did charge, that, the company having no common stock, the plaintiff had no remedy at law for his debt, but did charge that their usage had been to make taxes, and levy actions upon the members and their goods, to bear the charge of their company to pay their debts; and did complain that they now did refuse to execute that power; and did particularly complain against divers of the members by name, that they did refuse to meet and lay taxes, and that they did pretend want of power by their charter to lay such taxes; whereas they had formerly exercised power, and thereby gained credit: whereupon the plaintiff lent them two thousand pounds, which was for the use and support of the company's char and so ought to be made good by them, and so prayed to be relieved."

The company, though served with a process, failed to appear. "But divers particular members, being served in their natural capacities, did appear, and demur for that they were not in that

capacity liable to the plaintiff's demand." The Lord Chancellor sustained the demurrer, and, as to them, dismissed the bill. The case was taken by appeal to the House of Lords. There the decree of the Chancellor was reversed; and the case was remanded to his court, with directions to cause the officers of the company "to make such *leviation* upon every member of said company who is to be contributory to the public charge as shall be sufficient to satisfy the said sum to be decreed to the plaintiff in this cause, and to collect and levy the same, and to pay it over to the plaintiff as the court shall direct." Ample provision was made in the decree for the enforcement of this order. See also *Curson* v. *The African Co.*, decided in 1682, 1 Vern. 124.

By the deed of assignment, all the property and effects of every kind, which belonged to the company when the petition to have it declared a bankrupt was filed, passed to the assignee. Bump on Bankruptcy, 473, 478; Rev. Stat. sect. 5044. He was clothed with the power and duty to sue whenever suit was necessary. The statute in terms gave him the same right in any litigation he might institute which the bankrupt would have had "if the decree in bankruptcy had not been rendered, and no assignment had been made." Id. sect. 5047; Bump on Bank. 528. The liability of the plaintiff in error, and the right and title of the company, were legal in their character. If the company had sued, it might have sued at law. The rights of the company passed to the assignee, and he also could enforce them by a legal remedy. The assignee was subrogated to all the rights, legal and equitable, of the bankrupt corporation. This suit was, therefore, well brought in the form adopted. *Hall* v. *U. S. Ins. Co.*, 5 Gill, 484.

The assignee might have filed a bill in equity against all the delinquent shareholders jointly. *Ogilvie et al.* v. *Knox Ins. Co. et al.*, 22 How. 380. But if the company is utterly insolvent, in any event, a separate action at law in each case is much to be preferred. It is cheaper, more speedy, and more effectual. If the contingency should occur that the assets realized exceed the liabilities to be met, the District and Circuit Courts will see that no wrong is done to those adversely concerned. It is not to be doubted that this power will be exercised upon all proper occasions.

Upon the trial a large mass of testimony was given by the plaintiff, consisting of a prospectus and the original charter of the company, certified copies of the papers in the office of the secretary of the State touching the amendment to the charter, the deed of the register to the assignee, the petition of the assignee and order of the District Court relative to further stock payments, and proof of the publication of the order, and of the sending of a copy of the order, with a demand of payment, to the defendant by mail. The admission of all this evidence was excepted to. Further testimony was given tending to prove that the defendant bought and received from the company two stock certificates of $5,000 each, dated March 10, 1870, in the usual form, and in all respects complete, except that there was a blank for the name of the owner, which was not filled up. And further, —

" That said defendant paid for said stock twenty per cent of the par value of the same, paying part of said twenty per cent in northwestern land scrip, and giving her notes for the balance of said twenty per cent, which notes were duly paid to said company; and that said stock stood in her name upon the books of said company, and that there was evidence introduced tending to show that she received a dividend from said company thereon.

" And that shortly after the fire of Oct. 9, 1871, General Stewart, the president of the company, and brother of defendant, paid for her a call of twenty per cent made upon said certificates of stock by the company; but that said defendant never authorized such payment, but repudiated the same, and that no more than forty per cent had ever been paid on said stock.

" No evidence was introduced tending to show that said defendant ever subscribed for said certificates of stock or for any stock of said company, or that her name appeared on any list of stockholders of said stock circulated by said company.

" No other express contract was shown to have been made between said company and defendant."

The court charged the jury, in effect, that, if they believed the testimony, the defendant was liable. The charge was excepted to by the defendant. It was clearly correct. The only question was, whether she owned the stock. No one else claimed it. The certificates were issued and delivered to her. They belonged to her. They were the muniment of her title.

She could have filled the blanks with her name whenever she thought proper. She had paid to the company all that was then payable, and subsequently received a dividend. Her name was placed upon the stock list. These facts were conclusive against her.. She was estopped from denying her ownership. She could not assert her title if there were a profit, and deny it if there were a loss. The certificates showed the par of the stock and the amount to be paid. Upon receiving them, the law implied an agreement on her part to respond to the balance whenever called upon in any lawful way to do so. No special express agreement, written or oral, was necessary. The former was as obligatory as the latter could have been. It would be a mockery of justice to permit such an objection to prevail. *Ellis* v. *Schmoeck and Thomas*, 5 Bing. 521; *Doubleday* v. *Musket et al.*, 7 id. 110; *Harvey et al.* v. *Kay*, 9 Barn. & Cress. 356; *Upton, Assignee*, v. *Tribilcock*, *supra*, p. 45.

Where there are defects in the organization of a corporation which might be fatal upon a writ of *quo warranto*, a stockholder who has participated in its acts as a corporation *de facto* is estopped to deny its rightful existence. *Eaton et al.* v. *Aspinwall*, 19 N. Y. 119; *Abbot* v. *Aspinwall*, 26 Barb. 202.

Where a party executes a deed-poll, reserving rent, and the grantee enters into possession, he is under the same liability to pay such rent as if the deed were an indenture *inter partes*, and he had executed it. The law implies a promise to pay which may be enforced by an action of *indebitatus assumpsit*. *Goodwin et al.* v. *Gilbert et al.*, 9 Mass. 484. It has been held frequently in cases of this class, where the instrument was under seal and executed by only one of the parties, that covenant would lie against the other. *Finley* v. *Simpson*, 2 Zabr. 310.

*We find no error in the record, and the judgment is affirmed.*