## CHUBB v. UPTON.

1. A party who made a contract with an organization which had attempted irregularly to create itself into a corporation, and which acted as such, or who subscribed to its capital stock, cannot, in a suit by the corporation, defend himself against a claim growing out of such contract or subscription by alleging the irregularity of such organization.

2. The same rule applies where the stock of a corporation has been increased, and the question arises upon the liability of a subscriber for the increased stock.

3. An assignee in bankruptcy of a corporation represents it and its creditors, and the defence of its irregular organization cannot be set up against him by such subscriber.

4. A party receiving a certificate for a certain number of shares of stock, at a given sum per share, thereby becomes liable to pay the amount thereof when called upon by the corporation or its assignee.

5. *Upton* v. *Tribilcock*, 91 U. S. 45, *Sanger* v. *Upton*, id. 56, and *Webster* v. *Upton*, id. 65, cited and approved.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

Upton, as assignee in bankruptcy of the Great Western Insurance Company, a corporation organized under the laws of Illinois, brought this suit against Chubb. The company was originally chartered by the legislature in 1857.

In 1870, acting under the general laws of that State authorizing insurance companies to increase their capital stock, the directors and stockholders of the company took measures to increase its capital stock, and filed their papers for that purpose with the secretary of state, and the auditor of public accounts. By these proceedings the company undertook to increase its stock to $5,000,000.

The company, assuming that its stock had been increased, took subscriptions and issued certificates therefor, and immediately commenced doing business, issuing policies, &c., upon the basis of such an increase. Dec. 31, 1870, it held out to the public that its subscribed stock was $1,188,000, of which $222,831 was paid in, and $965,169 subscribed, for which the subscribers or holders were liable. Chubb became a subscriber to this increased stock, and a certificate for fifty shares was issued to him on the twenty-fifth day of November, 1870.

The company had a branch office at Grand Rapids, where

meetings of the stockholders residing there were held. Chubb was president of said branch, took part in those meetings, and also in a meeting of stockholders and directors held at Chicago in January, 1871. He paid money on his stock, and at one time, while holding it, gave another person a proxy to attend and vote at a stockholder's meeting at Chicago.

The company continued to do business, issue policies, &c., until it was put into bankruptcy, February, 1872. Upton was duly appointed assignee of the company on the eleventh day of April, 1872; and the court sitting in bankruptcy made an order upon the stockholders to pay, on or before Aug. 15, 1872, the balance due upon their stock. Notice was duly served upon them.

Upon the trial of the cause, Chubb objected to the produc tion in evidence of the proceedings by which the company increased its stock, upon the ground of their alleged irregularities, and of informality in the papers filed in the public offices. The objections were overruled, and Chubb excepted to the ruling of the court.

He also objected to the introduction in evidence of papers filed in the public offices of Illinois by the company, showing that it was doing business, and that it had stock subscribed to a large amount. This objection was overruled, and an exception taken.

He further offered to prove that he was induced to purchase the stock by false representations that he would only be compelled to pay twenty per cent upon the amount subscribed; and that the holders of the stock in the original company never increased their stock or authorized any one to increase it, and never sold or transferred it to the new company. The court excluded the evidence, and he excepted.

The court substantially charged the jury, that upon the admitted facts, and upon further facts proved by the plaintiff by uncontradicted and documentary evidence, the plaintiff was entitled to recover, and that the matters offered in evidence by the defendant constituted no defence to the action. The defendant excepted to the instruction.

There was a judgment against Chubb, who thereupon removed the case here.

*Mr. J. W. Champlin* for the plaintiff in error.
*Mr. M. J. Smiley*, contra.

MR. JUSTICE HUNT delivered the opinion of the court.

The numerous questions raised upon the trial of this action depend upon a few general principles which are not difficult of application.

It is settled by the decisions of the courts of the United States and by the decision of many of the State courts that one who contracts with an acting corporation cannot defend himself against a claim on such contract, in a suit by the corporation, by alleging the irregularity of its organization. This was settled more than a half a century since in the courts of the State of New York, and has recently been affirmed in this court. *Dutchess Collar Manufacturing Co.* v. *Davis*, 14 Johns. (N. Y.) 237; *Sanger* v. *Upton*, 91 U. S. 56; *Upton* v. *Tribilcock*, id. 45; *Buffalo & Allegheny Railroad Co.* v. *Cary*, 26 N. Y. 75; *Bissell* v. *Michigan Southern Railroad Co.*, 22 id. 258.

The same principle applies to the case of a subscription to the capital stock in an organization which has attempted irregularly to create itself into a corporation, and has acted as such. *Methodist Episcopal Church* v. *Pickett*, 19 N. Y. 482; *Upton* v. *Hamborn*, 3 Biss. 417.

The rule applies to increasing the stock of a corporation when the question arises upon paying a subscription for stock forming a part of such increase. The duty and the necessity of performing the contract of subscription are the same as in the case of an original stockholder.

An assignee appointed under the bankrupt laws of the United States represents both the corporation and its creditors, and the defence of irregular organization cannot be urged against him.

It has been several times adjudged in this court, that, in an action by such assignee to recover unpaid subscriptions upon stock in such an organization, the defence of false and fraudulent representations inducing such subscription cannot be set up; especially when the subscriber has not been vigilant in discovering such fraud, and in repudiating his contract. *Upton* v. *Tribilcock*, 91 U. S. 45; *Webster* v. *Upton*, id. 65; *Sanger*

v. *Upton*, id. 56; *Ogilvie v. Knox Insurance Co.*, 22 How. 380.

The same authorities hold that one who receives a certificate of stock for a certain number of shares, at a given sum per share, thereby becomes liable to pay the amount thereof when called upon by the corporation or its assignee. Nor is it necessary to sustain the action that there should have been a subscription for the whole amount named on the articles. *Rensselaer & Washington Plank Road Co.* v. *Westel*, 21 Barb. (N. Y.) 56.

The statute of Illinois of 1869 authorized an increase of the capital of the Great Western Insurance Company. Papers were filed under the law for that purpose, which were examined by the Attorney-General, and certified to be in due form; and the company proceeded to issue its stock upon that theory.

The defendant became a subscriber for fifty shares of this increased stock, the shares being $100 each. He paid a portion, to wit, thirty per cent, of this subscription. He attended meetings of the stockholders and of the directors, acting himself as such. He gave another person a proxy to attend a meeting of the stockholders at Chicago, and to vote for him; and he was elected and acted as the president of a branch of the said company.

It is idle to deny that this was the case of an organization which claimed to have taken, and apparently supposed that it had taken, the measures required by law to complete its increase of capital. It acted as such, and the defendant, by receiving his certificate of stock, entered into engagements with it as such. If it be conceded that its increased stock was but *de facto*, and that it could have been annulled or suppressed by the action of the Attorney-General as acting under an irregular organization, the defendant derives no aid from the admission. The cases cited are clear to the point that he cannot make the objection, but must perform the engagements he has made.

The last offer of the defendant was intended to present this question in its most formidable shape. It was to show that the original capital of $100,000 was fully subscribed; that the holders of this stock never increased the capital nor authorized its increase; that this company ceased to do business prior to

1868; that the $100,000 was not transferred to the company claiming to have organized on the increased capital; and that there was no valid transfer of the original stock or charter.

All this does not alter the fact that there was an attempted alteration of the company under the forms of law, approved by the Attorney-General, with an increased capital, in the organization and management of which the defendant took part; that he paid his money, received his certificate of stock, attended meetings, voted, acted as an officer, and, so far as the record shows, never repudiated his position at any time, even to the time of the trial. If successful, he would have shared in its profits. He may have been the dupe and victim of the action of others. He may have been an accomplice. At all events, he was so far an actor in the affair that he cannot escape the consequences of his position.

Another series of objections is to the admission of various pieces of evidence introduced to show that the defendant was a stockholder. The original stock-ledger had been destroyed by fire, and the plaintiff supplied its place by the introduction of sundry other kinds of evidence tending to prove who were the stockholders, and that the defendant was one of them. The importance of this evidence was at an end when the certificate of shares was afterwards given in proof, and when it was expressly admitted by the defendant that he held the same; that he made payments thereon, and acted as a holder of shares in the company. It is not necessary, therefore, to inquire whether or not the evidence was properly admitted.

At the time this writ of error was taken, the decisions of this court in *Upton* v. *Tribilcock*, *Sanger* v. *Upton*, and *Webster* v. *Upton*, to which we have referred, had not been made. They contain a clear statement of our views upon all the material questions arising in this record, and we suppose that this writ of error would not have been brought had they then been known to the party and his counsel. The careful examination then given to the several questions renders unnecessary a detailed review of them.

We think there is nothing in the record before us that would justify us in disturbing the verdict and judgment rendered in the Circuit Court. *Judgment affirmed.*