CASE No. 937.

S. & A. RAILROAD COMPANY v. EZELL.

SAME v. CATHCART.

SAME v. NASH.

1. By the first section of an act of incorporation, a railroad company were declared to "be, and they are hereby created, a body politic and corporate;" and in a subsequent section it was enacted "that when $100,000 shall have been subscribed, and $1 on each share shall have been paid in, the said company may organize and proceed to work." *Held*, that this requirement was sufficiently complied with when $100,000 were subscribed, and a sum in gross paid in equal to $1 upon every share subscribed.

2. *Held, further*, that a failure to comply strictly with these requirements would not have affected the corporate existence, but would have been an irregularity only, which could not defeat the right of the corporation to recover a stock subscription.

Before MACKEY, J., Richland, November, 1879.

The case is fully stated in the opinion of the court.

*Messrs. Rion, Lyles & Barron*, for appellants.

*Mr. W. A. Clark*, contra.

November 9th, 1880.   The opinion of the court was delivered by

McIVER, A. J.   The three cases above stated, presenting the same state of facts, and governed by the same principles of law, were tried together on Circuit and will be considered together here.

They were actions brought by the plaintiff to recover the amounts of the subscriptions alleged to have been made by the defendants to the capital stock of the Spartanburg and Asheville Railroad Company. That company was chartered by an act passed February 20th, 1873, (15 *Stat.* 346), which, in its first

section, declared that certain persons therein named, together with their associates, successors and assigns, " be and they are hereby created a body politic and corporate, by the name and style of the Spartanburg and Asheville Railroad Company, and by that name may sue and be sued,  *  *  *   make contracts," &c. In the eighth section of that act it is, amongst other things, provided " that when one hundred thousand dollars shall have been subscribed, and one dollar on each share shall have been paid in, the said company may organize and proceed to work." On March 25th, 1874, a meeting of the corporators was held, at which it was duly ascertained that there was over $100,000 of *bona fide* subscriptions to the capital stock of the company, whereupon an aggregate amount equal to $1 per share of the amount subscribed was paid in, though each subscriber did not pay $1 on each share subscribed for by him, the defendants in the above-stated cases, with perhaps others, never having paid anything. The company was then organized and proceeded to work, and had constructed and put into operation a very considerable portion of the road before the commencement of these actions, more than $500,000 having been subscribed to the capital stock and paid in, leaving, at the time of the trial below, of the total amount subscribed only about $20,000 unpaid, of which the subscriptions alleged to have been made by defendants form a part.

The Circuit judge charged the jury, among other things, that in order to enable the plaintiffs to maintain these actions, it ." must show that the corporation had strictly complied with all of the conditions prescribed by the charter as precedent to its organization ; that is, the plaintiff must show that before the organization of the company one hundred thousand dollars had been *bona fide* subscribed to its capital stock, and the one dollar per share, prescribed by section 8 of the charter, must have been paid by each subscriber upon each share by him subscribed, to the amount of at least two thousand shares, before the corporation could be legally organized so as to have a right of action against subscribers upon their subscriptions ; the payment in gross of the two thousand dollars by several of the subscribers for themselves and others, not being sufficient.". To this portion of the charge exception was duly taken, and the only question for us

to consider is, whether there was any error in the charge as above recited.

It will be observed that the act chartering this company, unlike many other railroad charters, declares the persons named in the first section, with their associates, successors and assigns, a corporation with the powers usually conferred upon such bodies, among which was the power to contract and be contracted with, to sue and be sued, and hence, when the defendants signed the paper set out in the "case," by which they bound themselves to take a specified number of shares "in the capital stock of the Spartanburg and Asheville Railroad Company, to be paid for when called upon, according to the regulations of said company," it is difficult to see what element of a valid contract was wanting. If the act chartering this company had, like some others, for example the act chartering the Charlotte and South Carolina Railroad Company, simply authorized the formation of "a corporate company, * * * which company, when formed *in compliance with the conditions herein prescribed*, shall have corporate existence as a body politic," and if one of the conditions prescribed had been here, as it was there, "that on each share of the stock subscribed for the subscriber shall pay to the commissioners who shall take the same, the sum of five dollars, * * * *and on non-payment of said installment the subscription shall be void;*" and if the charter of this company had provided, as the charter of that one did, "that whenever the sum of three hundred thousand dollars of said capital stock shall be subscribed for *in manner aforesaid*, the subscribers, their executors, administrators or assigns, shall be and they are hereby declared to be incorporated into a company, by the name and style of the Charlotte and South Carolina Railroad Company," &c., we could very readily understand why it should be held, as it was held in the case of *C. & S. C. R. R. Co.* v. *Blakely*, 3 *Strob.* 245, "that the mere signing of a paper by the defendant agreeing to take a certain number of shares of the stock of the company, without paying five dollars on each share at the time of subscribing, would not enable the company, after it was formed, to recover from the subscriber the amount so subscribed." In that case there was no legal person in existence at the time the alleged contract was

made, capable of contracting or being contracted with—no person capable of bringing a suit to enforce a contract—for the act did not constitute any particular persons a corporation, but only provided that those who had subscribed *in the manner therein prescribed,* should have the right to form a corporation after a certain amount had been subscribed *in that manner;* which corporation might, after it was thus formed, have the power to contract and be contracted with, to sue and be sued, &c. Here, on the other hand, the act, in its very first section, created the corporation and gave it all the necessary powers to enable it to make contracts and enforce them by suit. In that case, too, the act expressly provided that, upon non-payment of the cash installment required the subscription *should be void,* while here there is no such provision. But the differences between the two cases are so very well marked as scarcely to justify further comment.

The real question to be considered here is, *first,* whether the charter required the payment of $1 on each share, *by each subscriber,* to the amount of at least two thousand shares, as a condition precedent to the organization of the company; and, *second,* if so, whether a failure to comply strictly with this provision was not a mere irregularity in its organization, which would not have the effect of defeating the right of the plaintiff company to maintain these actions.

As to the first question, it is very obvious that the charter does not, in express terms, require that $1 per share shall be paid *by each subscriber.* To give the section that meaning it would be necessary to interpolate into the statute the words italicised. The language of the section is " that whenever one hundred thousand dollars shall have been subscribed, and one dollar on each share shall have been paid in, [by each subscriber,] the said company may organize and proceed to work." It does not declare by whom the $1 per share is to be paid, and we do not feel at liberty to interpolate words into the statute necessary to make such a declaration.

But, even if the statute did contain those words, it is manifest that there was a mere irregularity in the organization of the company which could not possibly have the effect of defeating the plaintiff's right of action upon a valid contract entered into

by the defendant previous to the formal organization of the company.

In the case of *Chubb* v. *Upton*, 95 *U. S.* 667, the Supreme Court of the United States said: "It is settled by the decisions of the courts of the United States and by the decisions of many of the state courts, that one who contracts with an acting corporation cannot defend himself against a claim on such contract in a suit by the corporation by alleging the irregularity of its organization, [citing the cases.] The same principle applies to the case of a subscription to the capital stock in an organization which has attempted irregularly to create itself into a corporation and has acted as such."

In the case of *Minneapolis and St. Louis Railway Co.* v. *Bassett*, 20 *Minn.* 535; *S. C.*, 18 *Am.* 376, the charter of the company provided that its capital stock should be divided into shares of $100 each, and $5 on each share should be paid at the time of subscribing. The action was brought to recover the amount of ten shares subscribed for by the defendant, upon which he had paid nothing at the time of subscribing, and his defence was rested upon that ground. It was held that he was liable. It is true that this case is not precisely in point, inasmuch as there the defendant subscribed after the incorporation and organization of the company; but it is, nevertheless, useful as affording a review of the authorities, in which it is shown that the cases relied upon to sustain such a defence are cases in which the statute required the payment to be made *as a condition of corporate existence*, while as we have seen, in the cases now before the court, the corporate existence of the plaintiff is derived directly from the express declaration of the legislative will contained in the first section of the act, and is not dependent upon any conditions whatsoever; and that the provision requiring the payment of $1 per share is, at most, a mere condition affecting, not the corporate existence of the plaintiff, but merely the regularity of its organization.

The judgment of the Circuit Court in each of the above-stated cases is set aside, and in each a new trial is ordered.

McGowan, A. J., concurred.