In re GRAND RAPIDS FURNITURE AGENCY.

In re SMITH et al.

(District Court, W. D. Washington, N. D.  November, 1913.)

No. 4,719.

1. CORPORATIONS (§ 243*)—STOCKHOLDERS—ISSUANCE OF STOCK.

Where three persons organized a corporation and were its sole stockholders and officers, having the custody of its books, certificates of stock properly filled out in their names, respectively, and signed, although not detached from the stubs in the stock certificate book, were sufficiently issued to constitute them stockholders and liable to creditors of the corporation for any unpaid balance due on such stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 943, 944, 946–950, 952–959, 974, 975, 979;  Dec. Dig. § 243.*]

2. CORPORATIONS (§ 243*) — LIABILITY OF STOCKHOLDERS — UNPAID SUBSCRIPTIONS.

Under Rem. & Bal. Code Wash. § 3677, which requires all of the stock of a corporation to be subscribed before it is authorized to do business, a subscriber cannot avoid liability to creditors for an unpaid part of his subscription by causing the stock to be issued to a trustee and to be held and sold as treasury stock, although he is entitled to credit on his sub-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

scription for any amounts received by the corporation for such stock sold by it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 943, 944, 946–950, 952–959, 974, 975, 979; Dec. Dig. § 243.*]

In the matter of the Grand Rapids Furniture Agency, bankrupt. On report of special master in the matter of the alleged stock liability of John C. Smith, W. M. Lucas, and F. E. Dickinson. Modified.

McClure & McClure, of Seattle, Wash., for trustee.

Trefethen & Grinstead, of Seattle, Wash., for respondents.

NETERER, District Judge. On January 29, 1912, the trustee filed a petition seeking to levy an assessment against John C. Smith, W. M. Lucas, and F. E. Dickinson to pay the debts of the bankrupt in an amount not exceeding an alleged liability for the unpaid portion of the capital stock of the bankrupt corporation subscribed by the respective parties, and on March 15, 1912, filed a separate petition to enforce the alleged stock liability of said parties. It is alleged that Smith, Lucas, and Dickinson on the 25th of April, 1911, made and subscribed articles of incorporation of the bankrupt, which recited that the capital stock should be $100,000, divided into 1,000 shares of $100 each; the respondents being named therein as the first trustees. It is further alleged that on May 9, 1911, the respondents signed a written subscription by which John C. Smith agreed to take 333 shares, W. M. Lucas 334 shares, and F. E. Dickinson 333 shares, but that this subscription had been changed so as to make it appear that Dickinson had subscribed for 900 shares, and Smith and Lucas each for 50 shares; that on the same day said stock was issued and accepted by the respondents in the proportions first above set out; that Smith had paid on his subscription an amount not exceeding $7,333.33, Lucas an amount not exceeding $3,333.34, and Dickinson $2,733.33, and, after an allegation of insufficiency of the assets to pay the claims against the bankrupt, prays for judgment against the respondents in the respective amounts of their unpaid stock liability. The petitions were referred to the referee in bankruptcy, John P. Hoyt, as special master, who heard evidence and arguments thereon and on October 3, 1913, reported to the court his findings of fact and conclusions of law. The special master stated: That he found it unnecessary to determine whether the subscription had in fact been altered. That Smith, Lucas, and Dickinson were the sole stockholders, having exclusive control of the stock, and that the stock had not been issued according to the stock subscription now appearing on the books of the company but had been issued as follows: John C. Smith, 333 shares; W. M. Lucas, 334 shares; F. E. Dickinson, 333 shares. That, after the issuance of such capital stock as aforesaid, Smith, Lucas, and Dickinson so conducted themselves as to creditors and parties in interest as to make it appear that they owned the stock in equal proportions, and that said Smith and Lucas were the chief financial backers of said bankrupt. That said Smith is entitled to a credit of $6,100 on his stock liability, and Lucas to a credit of $3,000. The special master concludes that Smith is liable for $33,-

300, less a credit of $6,100, and Lucas is liable for $33,400, less $3,000. No jurisdiction was acquired over Dickinson.

The testimony of various witnesses was to the effect that statements had been made by Dickinson, in the presence of Lucas and Smith, that about two-thirds of the stock was owned by Lucas and Smith in equal proportions; some of the witnesses stating that Lucas and Smith had nodded their assent to these statements. The witness McKnight, a representative of one of the largest creditors, who came to Seattle to investigate the financial standing of the company, stated in his deposition that he was told by Smith and Lucas that while the original subscription had been Smith and Lucas each for 50 shares, and Dickinson 900 shares, yet this had been altered by agreement, and that they were each entitled to one-third of the capital stock which had been issued to them accordingly. Three witnesses, employés of banks, testified as experts that in their opinion the figures in the original subscription showed signs of alteration.

No stock was issued according to the subscription as it now appears. But on May 9, 1911, the date of the subscription, the blanks in certificates Nos. 1, 2, and 3, for 333, 334, and 333 shares, were properly filled to indicate that Smith, Lucas, and Dickinson were the owners of that number of shares respectively. These certificates were not detached from the stubs, and across the face of each is written the word "canceled." The stubs in the stock book show that on the same day certificate No. 4, for 166 shares, was issued to Lucas "as trustee for Grand Rapids Furniture Agency," being transferred by F. E. Dickinson, who held same under certificate No. 3, for 333 shares; that certificate No. 5, for 167 shares, was issued to W. M. Lucas, "as trustee," etc., being transferred by W. M. Lucas, who held same under certificate No. 2, for 334 shares; and that certificate No. 6, for 167 shares, was issued to W. M. Lucas, "as trustee," etc., being transferred by John C. Smith, who held same under certificate No. 1, for 333 shares. Various certificates were thereafter issued to different parties, being transferred from W. M. Lucas, "as Trustee G. R. F. A."

On August 24, 1911, certificate No. 12, for 167 shares, was issued to W. M. Lucas "in pool," being transferred by W. M. Lucas, who held same under certificate No. 2, for 334 shares; certificate No. 13, for 166 shares, was issued to John C. Smith "in pool," being transferred by John C. Smith, who held same under certificate No. 1, for 333 shares; and certificate No. 14, for 167 shares, was issued to F. E. Dickinson "in pool," being transferred by F. E. Dickinson, who held same under certificate No. 3, for 333 shares. Thereafter various certificates were issued to the respective parties, being transferred from himself "in pool"; a notation being made upon the stub of the character of payment made therefor.

Lucas testified that the original subscription of the parties was as indicated in the original subscription; that certificates Nos. 1, 2, and 3 were written up by the witness in an effort to get the stock "into a pool," or into the hands of a trustee; that the subsequent issue of certificates Nos. 12, 13, and 14 "in pool" was with a view of getting that portion of the stock into a pool from which each of the said parties

would have the privilege of purchasing one-third, the stock to be issued to him only when paid for; and that the remainder of the stock held under certificates Nos. 4, 5, and 6 by Lucas, "as trustee," should be regarded as "treasury stock" to be sold to various parties for the benefit of the company. The witness testified that certificates Nos. 1, 2, and 3 were never delivered but remained undetached from the stub in the stock certificate book, which all the while remained in the possession of the company until delivered to the trustee.

[1] The respondents contend that the trustee cannot recover upon the alleged agreement or subscription, and that "if he depends upon the issuance and acceptance of capital stock, as he has alleged, he certainly must fail because there is no evidence of the issuance of any share of stock without the payment of the full consideration therefor." The respondents assert that no rights are acquired by reason of a certificate of stock not taken from the stock book or delivered to the purchaser.

Where one having no control over the books of the company is sought to be held, the rule stated is undoubtedly true. But—

"where a certificate is filled up and signed by the proper officer, though not detached from the stock certificate book, and' though the corporate seal be not affixed, it is sufficient issuance of the certificate to constitute the person to whom it is issued a stockholder, when such person has the custody of the certificate book and the power and right to detach it at any time." 26 Am. & Eng. Enc. of Law, 875; Halstead v. Dodge, 51 N. Y. Super. Ct. 169; Brown v. Finn (C. C.) 34 Fed. 124.

Here the parties sought to be charged were the officers and trustees, constituted the sole governing body of the corporation, had custody of its books, and could have detached the certificates at any time. A subscriber is liable for the amount of his unpaid subscription, which may be recovered for the benefit of the creditors by the trustee of a bankrupt corporation. Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523.

"To constitute one a subscriber no formal agreement in writing or otherwise is necessary. The acceptance of the shares themselves is equivalent to a subscription or an agreement to take them." 26 Am. & Eng. Enc. of Law, 1009; Upton v. Tribilcock, 91 U. S. 48, 23 L. Ed. 203; Sanger v. Upton, 91 U. S. 60, 23 L. Ed. 220.

No stock was issued in accordance with the written subscription in the record but rather pursuant to an arrangement whereby the parties were to have an equal interest. The actual issuance of the stock and the subsequent course of dealing therewith are inconsistent with such subscription. The corporation, as such, and the respondents, as original subscribers, participating in such issuance and course of dealing, are estopped from denying the liability of the respondents for unpaid stock held by each respectively.

[2] The contention of respondents that the issuance of the stock to them was merely designed to get it into the hands of a trustee for the company for the purpose of so manipulating the stock that they would be liable for no amount except in so far as they had paid for stock is fully answered by the statement that, before the corporation could do business as such, all the stock must be subscribed (section 3677, Rem. & Bal. Code), so that there is a liability as an asset for stock not

paid for. The adoption by the courts of the contention of counsel would nullify the law requiring all capital stock to be subscribed.

Upon the books of the company the respondents and Dickinson appeared as its first stockholders in the proportions as therein stated, and the creditors had the right to believe that the stock was paid for or that the stockholders were liable for the stock unpaid for. A subsequent transfer of that stock to escape liability to an irresponsible person could not impair that liability. 26 Am. & Eng. Enc. of Law, 1036; Bowden v. Johnson, 107 U. S. 251, 2 Sup. Ct. 246, 27 L. Ed. 386. Nor would a transfer to the company direct release it, as to creditors. Glenn v. Scott (C. C.) 28 Fed. 804. And a transfer to one of the respondents as a trustee for the company could have no greater effect.

Certificates Nos. 1, 2, and 3, for 333, 334, and 333 shares, to Smith, Lucas, and Dickinson, respectively, were issued on May 9th. On the same day certificates Nos. 4, 5, and 6 to Lucas, "as trustee," were issued by transfer from the respective parties. But it was not until August 24, 1911, that certificates Nos. 12, 13, and 14 were issued to each of the parties "in pool." Therefore, for a period of over two months, Smith, Lucas, and Dickinson held under certificates Nos. 1, 2, and 3, for 166, 167, and 167 shares of stock, respectively, as the absolute owners thereof; no attempt being made during that period to transfer them to any one. The fact that they undertook to transfer the number of shares held under certificates Nos. 1, 2, and 3 indicates an acceptance of the shares of stock covered by those certificates, even if the custody of the books were not sufficient for that purpose. The respondents are liable for the amount of the stock issued to them which has not been paid.

The trustee is not entitled to recover from the respondents the amount of any stock, the consideration of which has already been received by the corporation. The respondents are therefore entitled to credit not only for the amount of stock paid for by each of them respectively but also for the amount of stock paid for by other parties, where such stock was issued out of the "treasury stock"; each respondent being entitled to a credit for this amount in the proportion that each respondent's original number of shares bears to the total amount of shares issued.

The court acquired no jurisdiction over F. E. Dickinson. The fourteenth finding of fact of the special master, to which no exception is taken, is as follows:

"That it has been agreed between the trustee and the said John C. Smith and W. M. Lucas that this court in this cause shall have and exercise as full jurisdiction of all and singular the matters and things set forth in said petition for assessment and said separate petition for enforcement of said stock liability as if independent plenary suit or action had been brought as provided by law; all objections to the jurisdiction of this court to hear and determine said matters in this cause having been waived by said agreement."

The report of the special master is therefore modified, and this cause remanded to him, with instructions to make a computation of stock sold and paid for and deduct such amounts from the unpaid stock in the proportions above stated, and report to this court the amount due from each respondent.