---

### SANDERS v. PROCTOR.

(Supreme Court, Appellate Division, First Department. April 14, 1916.)

CORPORATIONS ☞100—SUBSCRIPTIONS IN STOCK—COLLATERAL AGREEMENTS.

    While the delivery and acceptance of treasury stock would raise an implied obligation to pay, the delivery of certificates of unissued corporate stock to the defendant at the request of M., pursuant to agreement between the defendant and M., raised no implied promise to pay for it, and as between the corporation and the defendant there was no obligation.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 450, 451; Dec. Dig. ☞100.]

    Clarke, P. J., and Smith, J., dissenting.

Appeal from Trial Term, New York County.

Action by Albert Sanders, as receiver, against Frederick F. Proctor, Jr. Judgment for defendant, and plaintiff appeals. Judgment affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

Louis J. Vorhaus, of New York City, for appellant.
Sumner B. Stiles, of New York City, for respondent.

PAGE, J. I think the judgment should be affirmed. The express contract was between Morris and Proctor, and the corporation cannot take advantage of it, on the theory of Lawrence v. Fox, 20 N. Y. 268, because there was no obligation between Morris and the company.

This was unissued stock, not treasury stock; i. e., stock which had been duly issued and turned back into the treasury of the company. The stock was not legally issued. It could only be issued for cash or property, which it concededly was not. It was not issued on subscription, for no subscription was made, and 10 per cent. was not paid. While the delivery and acceptance of treasury stock would raise an implied obligation to pay, no such obligation, as I understand, is raised by the delivery of certificates of unissued stock to one man on the request of a third. It was pursuant to the agreement between Morris and the defendant that the stock was issued, and not at the instance and request of the defendant. As between the company and the defendant there was no obligation, express or implied, to pay for the stock to the company.

Order filed.

LAUGHLIN and SCOTT, JJ., concur.

SMITH, J. (dissenting). The complaint in this action alleged that the plaintiff, Wonderland Amusement Company, at the "special instance and request of the defendant," issued and delivered 150 shares of its preferred stock to defendant, who "promised and agreed to pay therefor to the plaintiff the sum of $15,000." The answer admits the issuance and delivery of the certificates, but denies that this was at defendant's request, and denies that he promised to pay for it. There was also an affirmative defense setting up the agreement hereinafter described and alleging its cancellation. This defense was dismissed by the court for failure of proof.

It appeared from the testimony that on February 7, 1913, a written contract was entered into between the defendant and one Morris, who owned the majority of the stock of the plaintiff, and who was the original lessee of the New York theater building which he had assigned to the plaintiff. By this agreement the defendant agreed that:

"Immediately upon the execution hereof he will subscribe and pay the par value of one hundred and fifty (150) shares of the preferred stock of the Wonderland Amusement Company, Incorporated, the par value of which amounts to fifteen thousand ($15,000) dollars."

Morris agreed that upon defendant's so subscribing he would also subscribe for 150 shares of preferred stock, and would transfer to the defendant 375 shares of common stock in the plaintiff. Defendant agreed to bear half of the obligations assumed by Morris under the lease, and the parties agreed to share the expense of financing the plaintiff company. The plaintiff's witness, Wenzel, who was vice president and secretary of the plaintiff, testified that immediately after the execution of the agreement he delivered to the defendant the certificates for both common and preferred stock, duly signed, and that the defendant thereupon said he would send a check over later. The defendant and his attorney deny this, and say that the stock was delivered two days later by messenger, and that defendant never in express words promised to pay for it, although he understood that he was to do so.

The court dismissed the complaint on the ground that no contract relations were shown to have existed between the plaintiff and the defendant and that the defendant's only agreement with regard to payment for the stock was with Morris to pay the money to him.

It is contended that, because the plaintiff made a motion for a directed verdict and the defendant a motion for the dismissal of the complaint, the decision in favor of the defendant was a decision in defendant's favor of every question of fact upon which there was any evidence presented. It is probably true that, if a verdict had been directed by the court, such would have been the effect of the verdict. Even then, however, we might look into the opinion of the court, as shown in the discussion set forth in the record, to see what was intended to be decided. The court, however, dismissed plaintiff's complaint, and in the discussion reproduced in the record the ground of the dismissal clearly appears to have been that there was no contract relation between the defendant and the corporation, and that the con-

tract made between the defendant and Morris was not a contract of which the corporation could take the benefit.

We will assume, for the argument, that the contract with Morris was nothing more than an agreement to subscribe for stock, and that, nothing having been paid thereon at the time the agreement was made, it was not enforceable by the corporation. We will assume, further, that the Wonderland Amusement Company was not entitled to recover upon the contract with Morris as a third party for whose benefit the contract was made. Under these assumptions, unless the plaintiff has proven a direct contract, express or implied, between the corporation and the defendant, there can be no recovery in this action.

The defendant insists, and the trial court seemed to be of the opinion, that under the complaint a recovery upon an implied promise was not authorized. In this we think there was clearly error. The complaint does not allege an express promise; it alleges simply a promise to pay, which may be supported either by proof of an express or implied promise to pay. Underwood v. New Netherlands Bank, 150 N. Y. Supp. 487.

After having made this contract with Morris, in which he agreed to subscribe and pay the par value of 150 shares of the preferred stock of the Wonderland Amusement Company, Incorporated, the defendant received from Mr. Wilzin, the secretary of that company, scrip for 150 shares, of the par value of $15,000, and, according to the testimony of Mr. Wilzin, he agreed to send his check therefor the next morning. This conversation is denied by the defendant, who claims to have received the stock two days later. According to his own testimony, then, he received the stock upon February 9th, and there was no offer to return the same until February 22d or 23d. He swore himself that he got the stock and kept it; that he knew that it would have to be paid for; that he knew after he had the stock that he was a stockholder of the company, and he intended when he received the 150 shares of preferred stock to pay for it. Irrespective of the express promise to pay, from the fact of the receipt and retention of the stock under the circumstances shown, there was an implied promise to pay the par value thereof. In 10 Cyc. 381, the rule is stated:

"An acceptance of a certificate of a stated number of shares of the stock of a corporation, issued to the person who accepted it, implies that he will pay for them."

In Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523, it is said:

"One who receives a certificate of stock for a certain number of shares, at a sum per share, thereby becomes liable to pay the amount thereof when called upon by the corporation."

The evidence of Morris to the effect that the stock was delivered pursuant to his contract with the defendant has no significance. In pursuance of the agreement with Morris the transfer was made by the corporation to the defendant of the stock, and his promise to pay therefor—I care not whether express or implied—followed. If the agreement with Morris were invalid, it could be disregarded entirely, and plaintiff's claim might rest purely upon the transfer by the corpora-

tion to the defendant of the stock and his promise to pay therefor. That would not be a subscription to the stock, which requires the payment of a sum down; but it would be the actual sale of stock, wherein the transfer of the stock is a sufficient consideration to support the defendant's promise to pay therefor. In 1 Morawetz, Priv. Corp. (2d Ed.) § 61, it is said:

"The issue of new shares by a corporation may take the form either of a sale and purchase of the shares, or of an ordinary subscription. There is an important difference between the two classes of contracts."

In Marshall Corp. § 243, the text reads:

"A subscription for stock, and a contract to purchase stock from a corporation, are not the same, and, as we have seen, they are to some extent governed by different rules."

In 10 Cyc. 404, 405, the text reads:

"A distinction has also been taken between a subscription to the capital stock of a corporation and a purchase of its shares from the corporation. Thus, where a contractor agreed to build a railroad and to accept in payment a certain amount of its capital stock, the agreement was a purchase, and not a subscription."

In the case of Avon Springs Sanitarium Co. v. Kellogg, 125 App. Div. 51, 109 N. Y. Supp. 153, affirmed Smith v. Kellogg, 194 N. Y. 567, 88 N. E. 1132, it was held that:

"Although a subscriber for stock of a corporation not yet in existence is not bound by his subscription, he becomes bound when, after the due organization of the company, he accepts the scrip and gives his check in payment therefor, for in such case he ratifies and confirms his subscription."

It was further held that the issue of the scrip of the duly organized corporation is a sufficient consideration for a check given in payment therefor. This case seems to be in principle on all fours with the case at bar; the only difference being that a check was given, instead of a verbal promise to pay. There is no rule of law that requires a promise to pay for stock delivered to be in writing. The statute of frauds is not asserted, nor could it be, because the stock itself was delivered. The giving of a check is not a payment, within section 53 of the Stock Corporation Law (Consol. Laws, c. 59), requiring a payment of 10 per cent. to make valid a stock subscription. If we assume, therefore, that we have here, as in the case cited, an unenforceable subscription agreement afterwards carried out by the acceptance of the stock and agreement to pay therefor, that agreement would seem to be enforceable notwithstanding the fact that the agreement with Morris could not have been enforced by the corporation, and directly within the authority cited the plaintiff was entitled to go to the jury upon the question whether there was an express or implied promise to pay the company $15,000 for this stock.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., concurs.