132 F.3d 39
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GUAM ECONOMIC DEVELOPMENT AUTHORITY, Plaintiff-Appellant,
v.
Luis C. BENAVENTE, Defendant,
and
James M. MENDIOLA, Defendant-Appellee.
GUAM ECONOMIC DEVELOPMENT AUTHORITY, Plaintiff-Appellee,
v.
Luis C. BENAVENTE; Victoria R. Maratita, Defendants-Third
party plaintiffs-Appellants,
v.
Jesus L. PEREZ, Third-party defendant-Appellee.
 Nos. 96-15866, 96-16293.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1997.
Dec. 12, 1997.
 
 Appeal from the United States District Court for the District of Northern Mariana Islands Alex R. Munson, Chief Judge, Presiding
 Before REINHARDT, LEAVY and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 These consolidated appeals concern the validity and enforcement of certain corporate subscription agreements. After careful consideration of the briefs, oral arguments and records, we affirm the district court's grant of summary judgment in each case. Because the parties are well familiar with the factual and procedural history of these actions, we need not recount it here.
 
 
 3
 * The district court properly granted summary judgment to Mendiola concerning the claims brought by the Guam Economic Development Authority ("GEDA") on the basis of claim preclusion. When an assertion of preclusion is founded upon a state court judgment, federal courts apply the state's res judicata and collateral estoppel principles. Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir.1988). Thus, the law of the Commonwealth of the Northern Mariana Islands ("CNMI") governs this preclusion issue. Under CNMI law, "[r]es judicata will bar matters not only which were but which should have been litigated previously as well." In re Camacho, 1993 WL 614815, * 3 (N. Mar. I.1993).
 
 
 4
 GEDA contends the doctrine of preclusion should not apply because (1) GEDA never had notice of the superior court action and (2) GEDA never had a "full and fair opportunity" to litigate Mendiola's liability. However, the record demonstrates GEDA did have knowledge of the superior court action, and that GEDA had an opportunity to protect its interests in the CNMI superior court proceedings. Because GEDA knowingly failed to avail itself of the opportunity to pursue its remedies in the superior court, the district court did not err in determining that GEDA's claim in the district court was precluded by CNMI law.
 
 
 5
 We find no merit in GEDA's contention that Mendiola failed to enter necessary superior court documents into the district court record. There is no need to enter the entire record of prior litigation in order to properly raise a claim preclusion defense "[w]hen the moving party has introduce[d] a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Takahashi v. Bd. of Trustees of Livingston, 783 F.2d 848, 850 (9th Cir.1986) (citation and internal quotation marks omitted). The district court complaint and Mendiola's memorandum supporting summary judgment reveal the controlling facts and make it clear that the only issue in both cases was whether Mendiola's Alliance Air Saipan, Inc. ("Air Alliance-Saipan") subscription agreement obligated Mendiola to pay $100,000. Therefore, the district court did not err in failing to require Mendiola to file additional superior court documents. Further, the district court's decision to allow Mendiola to assert the preclusion defense even though he had not raised it in his answer was well within the court's discretion and we will not disturb it on appeal.
 
 II.
 
 6
 The district court also properly granted summary judgment in favor of GEDA and Jesus Perez against Maratita and Benavente. The court correctly determined that Benavente and Maratita are estopped from denying liability on the subscription agreements.
 
 
 7
 CNMI has not specifically addressed the validity of subscription agreements, nor has it addressed the defenses available to those contesting subscription agreements. Absent controlling CNMI law, the common law as expressed in the Restatements, or if not expressed in the Restatements, the law "as generally understood and applied in the United States" controls. 7 N. Mar. I.Code § 3401. The law is well settled in the United States that a stockholder waives "his right to avoid a stock subscription by being active in the affairs of the corporation and participating in its operations." 18A Am.Jur.2d Corporations § 666 (1985); See also Fletcher Cyc. Corp. § 1965 (Perm. Ed.) ("If a person knowingly allows himself or herself to appear as a subscriber and shareholder in a corporation, and if the person acts as a shareholder, by ... participating in corporate meetings, accepting corporate office, or otherwise, the person will be estopped ... to allege that the subscription was invalid.").
 
 
 8
 Benavente and Maratita are estopped, as a matter of law, from challenging the validity of the subscription agreements because they actively participated in the affected corporation, Air AllianceSaipan. Air Alliance-Saipan's articles of incorporation listed Benavente as a director and vice-president, while Maratita was listed as a director and secretary. Their active participation in the corporation is evidenced by their attendance at shareholders meetings, their signatures on bank cards and their signatures on the resolution assigning their own share subscriptions to GEDA. Benavente and Maratita also held themselves out as fully paid-in shareholders. Although Benavente and Maratita contend they never knew what they were signing, after reading the articles of incorporation and the minutes of the shareholders' meetings, reasonable minds could not differ in determining that Benavente and Maratita actively participated in Air Alliance-Saipan. Where reasonable minds could not differ on an issue of fact, the issue may be appropriately resolved on summary judgment. See, e.g., Provenz v. Miller, 102 F.3d 1478, 1489 (9th Cir.1996).
 
 
 9
 At oral argument, Benavente and Maratita contended that the relevant transactions did not occur with Air Alliance-Saipan, but with a sister company, Air Alliance, Inc. ("Air Alliance-Guam"). Therefore, Benavente and Maratita argue, the corporate estoppel principle cannot apply. Although Air Alliance-Guam was the beneficiary of the GEDA loan, the subscription agreements were assigned to GEDA by the corporate action of Air Alliance Saipan. Thus, the relevant action which bound Benavente and Maratita was taken by the corporation in which they actively participated. Thus, the district court properly applied the estoppel doctrine.
 
 
 10
 Benavente and Maratita's declarations also claim they did not understand the effect of the corporate documents they executed. Regardless of their assertions, Benavente and Maratita are "presumed to know [their] own signature and the contents of the contracts to which [they] become a party." 29 Am.Jur.2d Evidence § 282 (1994). Benavente is a legislator and Maratita does not dispute GEDA's assertion that she was an experienced businesswoman in the airline industry. Further, the documents could easily be understood from a plain reading. The resolution contained a two page exhibit which clearly assigned their subscription agreements to GEDA in return for the Air Alliance-Guam loan. The exhibit is written in simple, concise language. The articles of incorporation signed by Benavente and Maratita recite their stock ownership, estopping them from denying the truth of the recitals for the purpose of avoiding liability on their subscriptions. Fletcher, Cyc. of Corp. § 1965 (Perm. Ed.). Both Benavente and Maratita signed affidavits indicating that they had already paid for their shares in the corporation.
 
 
 11
 Benavente and Maratita are also estopped from denying the validity of the agreements based on Perez' alleged misrepresentation of equity investors because Maratita made a partial payment and Benavente attempted to make a payment after they, as incorporators and officers, had access to documents revealing all investors of Air Alliance-Saipan. 18A Am.Jur.2d Corporations § 666 provides:
 
 
 12
 [a] subscriber who has made a part payment on his subscription to stock will be deemed to have waived any objection that he might have had thereto; and the same considerations which apply to a part payment of corporate shares by a subscriber apply where the subscriber gives his promissory notes in payment for the whole or a part of his subscription, in which case he will be deemed to have waived his right to avoid liability on his subscription.
 
 
 13
 18A Am.Jur.2d Corporations § 666 (footnotes omitted). Maratita made a payment of $10,000 on June 19, 1991. At this point, Maratita had been an officer and director of Air Alliance-Saipan for two months so she had ample opportunity to discover whether Perez had misrepresented who had invested in Air Alliance-Saipan before making a partial payment. Benavente gave a post-dated check for November 10, 1991, to Maratita. Although this check was returned for insufficient funds, Benavente continued to promise payment even after he knew that equity investment was not forthcoming from at least some of the promised sources. "[T]he defense of false and fraudulent representations inducing such subscription cannot be set up; especially when the subscriber has not been vigilant in discovering such fraud, and in repudiating the contract". Chubb v. Upton, 95 U.S. 665, 667-68 (1877). Benavente and Maratita, as directors and officers, had ample opportunity to discover any alleged misrepresentations regarding the investors of Air Alliance-Saipan, and their failure to vigilantly investigate the capitalization of Air Alliance-Saipan estops them from now challenging the validity of the subscription agreements on the grounds that they were obtained by misrepresentation.
 
 
 14
 Benavente and Maratita also argue the subscription agreements were invalid because they were not executed until after the time for payment had expired. However, "a subscriber to the stock of a corporation cannot escape liability to pay for the subscription on the grounds that he did not pay the sum required to be paid at the time he subscribed." 18A Am.Jur.2d Corporations § 664. Thus, the defendants' defense of impossibility must fail as a matter of law.
 
 
 15
 In conclusion, Benavente and Maratita are estopped from attacking.the validity of their subscription agreements with Air Alliance-Saipan because they participated in the corporation, they affirmed their obligations in their affidavits and the articles of incorporation, and they attempted to make partial payments on the subscription agreements. Because any potential issues of fact are contained within defenses which the defendants are estopped from presenting, the district court did not err in determining there were no material issues of fact in this case, and GEDA was entitled to judgment as a matter of law.
 
 III.
 
 16
 The district court properly granted summary judgment in favor of Perez. As mentioned supra, Benavente and Maratita, as officers and directors of Air Alliance-Saipan, affirmed their debts after having access to financial information and participating in financial decisions. "To be entitled to relief from a subscription to stock procured by fraudulent statements or prospectuses, a subscriber must act promptly." 18A Am.Jur.2d Corporations § 626 (1985). Benavente and Maratita's failure to act for over three years after they had knowledge of the circumstances surrounding their subscription agreements estops them from now asserting that their subscription agreements were fraudulently obtained. Therefore, the district court did not err in granting summary judgment in favor of Perez.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3