KROEGHER v. CALIVADA COLONIZATION CO. et al.

CALIVADA COLONIZATION CO. et al. v. KROEGHER.

(Circuit Court of Appeals, Third Circuit. December 26, 1902.)

Nos. 33, 34.

1. TRUSTS—PERSON ACTING IN FIDUCIARY CAPACITY—PURCHASE OF PROPERTY BY DIRECTOR AS AGENT OF CORPORATION.

A director of a corporation, who was appointed by a resolution of the board of directors on a committee to settle certain mortgages and claims against the corporation, and guarantied in any "financial arrangements" he might make for the purchase of such claims, acted in that behalf not merely as a director, but as an agent and trustee for the corporation, and cannot claim for himself the benefit of reductions he secured in the adjustment and compromise of the claims, although he purchased the same with his own funds.

2. CORPORATIONS—ESTOPPEL—ACQUIESCENCE IN ASSERTION OF INVALID CLAIM.

Action of the directors and stockholders of a corporation showing a disposition or intention to recognize an unauthorized claim made by a director that he was entitled to be paid the face value of claims against the corporation which he had purchased at a discount as agent, and held in trust for its benefit, does not give validity to such claim, nor estop the corporation from denying his right.

3. DECREE—MATTERS CONCLUDED—FIDUCIARY RELATION BETWEEN PARTIES.

A director of a corporation, acting as its agent, purchased certain mortgages against its property at a discount in his own name, using his own funds. He afterward foreclosed the mortgages, and bid in the property at the sale under the decree. Held, that such decree, which was for the full amount of the mortgage debts, was not conclusive of his right to receive such amount from the corporation for his own benefit, since it was based on his legal title only, and no question relating to the fiduciary capacity in which he held the mortgages was presented to or determined by the court.

4. TRUSTS—PURCHASE OF PROPERTY BY TRUSTEE.

The rights of a director of a corporation, who purchased certain mortgages against its property with his own funds, but pursuant to a resolution of the board of directors which guarantied his repayment, were not enlarged, as against the corporation, by his acquiring the title to the property through foreclosure; such title being held by him in trust for the corporation, subject only to his right to be repaid his actual outlay, with interest.

5. CORPORATIONS—UNPAID STOCK SUBSCRIPTIONS—ENFORCEMENT FOR BENEFIT OF CREDITORS.

A statutory provision that subscribers to the stock of corporations shall be required to pay deferred installments on their stock at such times as shall be determined by the directors, and that such payment may be enforced by action after certain notice of such calls has been given, does not affect the power of a court of equity in insolvency proceedings against a corporation to decree payment of such unpaid subscriptions for the benefit of creditors, although no call therefor has ever been made by the directors.

---

¶ 1. The power of officers and directors in their individual capacity to deal with corporation, see note to Bensiek v. Thomas, 13 C. C. A. 466.

¶ 5. Stockholders' liability to creditors in equity, see notes to Rickerson Roller Mills Co. v. Farrell Foundry & Machine Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.

See Corporations, vol. 12, Cent. Dig. § 2269.

6. SAME — INSOLVENCY PROCEEDINGS — ADJUSTMENT OF ACCOUNTS BETWEEN STOCKHOLDER AND CORPORATION.

The receiver appointed in insolvency proceedings against a corporation filed a petition against one of the directors to obtain a conveyance to the corporation of property alleged to be held by such director in trust for its benefit. Such relief was decreed, and the matter was referred to a master to state an account of the amount due from the corporation to the director in respect to the trust. Pending a report thereon, a decree was entered in the main suit making an assessment on all stockholders for the amount of their unpaid subscriptions, for the benefit of creditors. *Held*, that it was competent and proper for the court, in entering a decree in favor of the director for the amount found due him from the corporation, to deduct therefrom the amount of his unpaid subscription, although such matter may not have been included in the special reference.

7. USURY — LAW GOVERNING CONTRACT.

An agreement made in good faith by a Colorado corporation to pay one of its directors 8 per cent. interest on advances to be made by him in purchasing liens on the corporation's property in Nevada, in consideration of such advances and his services in connection therewith, was valid, where such rate of interest was legal both in Colorado and Nevada, although it was not legal under the laws of Pennsylvania, where the contract was actually made.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

George B. Gordon, for W. C. Kroegher.

J. H. McCreery, for Calivada Colonization Co.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. These are cross appeals from a decree of the circuit court of the United States for the western district of Pennsylvania. Joseph W. Rapp filed December 30, 1899, a bill in equity in that court against the Calivada Colonization Company, a corporation of Colorado, averring the insolvency of that company, and praying for the appointment of a receiver. On the same day A. C. Hays was appointed receiver, and thereafter, January 18, 1900, he filed in the same court a petition in the nature of a bill for a declaration of trust against W. C. Kroegher, on which an interlocutory decree was made February 10, 1900, as follows:

"And now, February 10th, 1900, upon consideration of the averments contained in the petition filed by A. C. Hays, Receiver, on January 18th, 1900, the exhibits thereto attached and affidavits submitted therewith, and the affidavit of W. C. Kroegher, Respondent, and after argument of counsel, it is ordered, adjudged and decreed that a bond in the penal sum of Twenty thousand ($20,000) dollars be executed by the Calivada Colonization Company, by A. C. Hays, its Receiver, in favor of W. C. Kroegher and with the American Surety Company, of New York, as surety, conditioned for the payment of the following sums by the said Calivada Colonization Company to the said W. C. Kroegher within ten (10) days after this court (or the proper Appellate Court, in case an appeal be taken) shall adjudicate the same to be due and payable, to wit:

1. All the indebtedness of every nature and kind of the said Calivada Colonization Company to the said W. C. Kroegher, together with interest thereon to the date of the payment.

2. Any advances made by the said W. C. Kroegher of moneys used in and about the operation, care and management of the ranch and store of the company in Nevada, and any taxes paid thereon while the said Kroegher has

been in possession of the said property, and also his reasonable expenses and counsel fees in and about the matter of the recent sheriff's sale of the property of the said company to said Kroegher.

The amounts due to the said Kroegher under the two preceding paragraphs to be settled and adjudicated by this court subject to the right of appeal.

3. To indemnify the said W. C. Kroegher of and from every liability of every nature and kind whatsoever incurred by him while in possession of the Company's ranch and store in Nevada.

It is further ordered and decreed that upon the filing of said bond, the said W. C. Kroegher be, and is hereby enjoined, inhibited and restrained from making any sale or disposition of the real estate described in the petition or of the personal estate conveyed to said Kroegher by said Calivada Colonization Company, except as hereinafter decreed, or from encumbering or in anywise interfering with the same.

It is further ordered, adjudged and decreed that the said W. C. Kroegher make, execute and deliver to the said Calivada Colonization Company a proper deed of conveyance transferring all his right, title and interest of, in and to the real estate lately belonging to the said Calivada Colonization Company and lately purchased by him at Sheriff's sale.

It is further ordered, adjudged and decreed that the said W. C. Kroegher make, execute and deliver a bill of sale to the said Calivada Colonization Company for all personal property now on the ranch in Nevada, and that the said W. C. Kroegher surrender possession of all said real and personal property to A. C. Hays, Receiver of said Calivada Colonization Company.

It is further ordered that upon delivery of said assignment and the surrender of possession, all liability of the said Kroegher to said company for an accounting as to his management of the ranch shall cease. The only matters left open for consideration and adjustment, under the further decree of the Court, being an adjustment of the difference between the cash actually received by W. C. Kroegher (if any) while in possession of said ranch, and the cash actually advanced or paid out by said Kroegher (if any) while in possession of the said ranch, being included in the second paragraph of this decree relating to the bond.

That an accounting be forthwith taken of the amount due and payable to the said W. C. Kroegher under the terms of this decree and of the bond hereinbefore recited, and the said matter be and is hereby referred to H. D. Gamble, Esq., as Master, to settle and adjust the account and report the same to the court."

The master filed his account and report April 13, 1901, in which he exhaustively considered the law and the evidence, finding that the Calivada Colonization Company was then indebted to Kroegher, including principal and interest, in the sum of $12,073.54. After numerous exceptions had been taken on both sides to the master's report and considered by the court below, they were all overruled, and the report and account stated by the master were in all respects confirmed, and a final decree in accordance therewith was made July 16, 1901.

The Calivada Colonization Company was incorporated in January or February, 1895, and organized March 13, 1895. Kroegher became a stockholder thereof December 1, 1896, purchasing and receiving certificates for 2,000 shares of the capital stock of the company of the par value of $1 each, for which he paid in cash $500 and received credit on the books of the company for the balance, namely, $1,500, as "stock commissions and sundries." He became a member of the board of directors December 17, 1896, and president of the company January 21, 1898, and continued president until November 14, 1898, when he resigned that office, but continued as a

director. Including the period of his presidency he was a director of the company continuously from December 17, 1896, until after the suit was brought in the court below. At the time when Kroegher became a stockholder of the company it owned certain real estate consisting of a ranch in Pahrump Valley, in Nye County, Nevada, which was incumbered by two mortgages, one executed by the company to Angus McArthur, and the other executed by the company to the Taylor Trust Company, a corporation of California. There were also a number of claims against the company which were subsequently reduced to judgment in Nevada in favor of William T. Craig, and sundry unpaid state and county taxes against the above mentioned real estate. At a meeting of the board of directors January 21, 1897, the following resolution was adopted:

"Resolved, That M. D. Hays and W. O. Kroegher be appointed a committee of two to go to the Pahrump, and that this company will guaranty to W. O. Kroegher in any financial arrangements he may make for the purchase of the Taylor and McArthur and other claims against this company."

Acting on this resolution Kroegher and Hays, the latter then being the president of the company, visited the ranch referred to in February, 1897, and Kroegher purchased and had assigned to himself individually the Taylor and McArthur mortgages, and also the Craig judgment, which had been recovered January 28, 1897. The principal sum due on the McArthur mortgage at the time of its purchase by Kroegher was $3,000. The whole consideration for the assignment of this mortgage was $2,500, which he paid with his own money. On the Taylor mortgage there was due at the time of its purchase by Kroegher the principal sum of $2,400, together with interest amounting to $348, making a total of $2,748. For the Taylor mortgage Kroegher paid out of his own funds $2,400, and settlement was made with Taylor for the accrued interest by the issuance or transfer to him of 500 shares of the capital stock of the company. The shares of stock thus issued or transferred, however, were not the property of Kroegher, and he was in no wise entitled to any credit, as between the company and himself, for such issue or transfer. There was due on the Craig judgment at the time of its purchase by Kroegher the principal sum of $2,360.42, besides interest and costs. The whole consideration paid to Craig for the judgment was $2,200, of which Kroegher paid $1,440 with his own money and the company paid the residue. In the master's account Kroegher is allowed credit for $2,500 paid for the McArthur mortgage, $2,400 paid for the Taylor mortgage, and $1,440 paid on account of the Craig judgment, together with interest on these several amounts. There is, however, no assignment of error relating to the credit allowed with respect to the Craig judgment. One of the principal questions on Kroegher's appeal is raised by the fifth and ninth assignments. They are as follows:

'Fifth. The Court erred in not sustaining the fourth exception filed to the report of the Master, said exception being as follows, to wit:

'Fourth. The Master erred in only allowing W. O. Kroegher the sum of $2,400 as the principal of the R. B. Taylor mortgage, and the sum of $2,500 as the principal of the A. McArthur mortgage.' * * *

Ninth. The Court erred in not sustaining the eighth exception filed to the report of the Master, said exception being as follows, to wit:

'Eighth. The Master erred in finding as a fact that there was such a trust relationship between the company and Kroegher at the time of his purchase of the Taylor and McArthur mortgages as to make him a trustee for this company.'"

The two mortgages designated as the R. B. Taylor mortgage and the A. McArthur mortgage were those executed, as before stated, to the Taylor Trust Company and Angus McArthur respectively. These two mortgages and the Craig judgment having been assigned to Kroegher as above stated, he brought suit in Nevada against the company on the mortgages in July, 1898, obtaining judgment or a decree and an order of sale October 5, 1898. The McArthur mortgage was executed June 5, 1895, to secure payment of $5,000, with interest at the rate of 8 per cent. per annum. Of the above amount $2,000 had been paid before suit was brought, leaving, aside from interest, $3,000 unpaid principal. The Taylor mortgage was executed July 15, 1895, to secure payment of $5,900, with interest at the same rate. Of this amount $3,500 was paid August 4, 1896, leaving, aside from interest, $2,400 unpaid principal. The judgment or decree so obtained by Kroegher awarded payment to him of $3,000, the unpaid balance of principal of the McArthur mortgage, together with interest thereon from June 5, 1895, and of $2,400, the unpaid balance of principal of the Taylor mortgage, together with interest thereon from August 4, 1896, and also interest on the sum of $5,900, the original amount of that mortgage from January 15, 1896, to August 4, 1896, the date of the above mentioned payment or credit of $3,500. Kroegher also caused execution to issue on the Craig judgment and to be levied on the personal property of the company on the ranch. The real estate and personal property of the company respectively were advertised for sale under the order of sale and the execution, but, owing to certain negotiations between Kroegher and the company, sale was stayed by him in November, 1898. Subsequently, in August, 1899, both the ranch and the personal property thereon were sold at Sheriff's sale, under the decree or judgment on the mortgages and an alias execution on the Craig judgment, to Kroegher; he being the only bidder. It does not appear that he or any one for him paid anything in connection with his purchase at sheriff's sale, save the costs and other expenses incident to it, and for the full amount of these he has been allowed credit in the master's account. It is not claimed on the part of Kroegher that he at any time was the absolute owner, at law and in equity, of the ranch or the personal property thereon. It clearly appears from the evidence that in all his dealings with respect to the management of and acquisition of title to such real estate and personal property he acted as representative and agent of and trustee for the company and that, while he was entitled to be reimbursed for moneys expended and reasonable expenses incurred by him and to be compensated for his services in the performance of the duty he had assumed, he acquired as against the company no equitable title to or claim against any of the property, real or personal, save the right to be indemnified for his reasonable outlays and expenses and receive reasonable compensation for his

services. Indeed, Kroegher did not at any time before the filing of the petition of the receiver against him disclaim the fiduciary or trust relationship borne by him to the company. But it is urged on his behalf that in taking the assignment of February 15, 1897, and February 23, 1897, respectively, of the Taylor and McArthur mortgages, he was acting, not as agent of or trustee for the company, but solely in his individual and personal capacity and for his own benefit, so far as any profit might be realized from acquiring title to the mortgages by the payment of a sum of money less than the amount remaining due and unpaid on those securities. In his affidavit by way of answer to the petition of the receiver Kroegher says:

"There was no understanding or agreement or suggestion that I was buying these mortgages for the company; on the contrary, there was a distinct understanding that I bought them for myself, the only idea being that as I was interested in the company I would be more lenient with the company in the collection of the mortgages than the parties were that then owned them, as the owners at that time were insisting on immediate payment. * * * I explicitly deny that I bought any of these mortgages or judgments as agent of the company. I bought and paid for them with my own money."

We have failed to discover any evidence of an understanding or agreement on the part of the company, prior to the assignment of the mortgages to Kroegher, that he was to purchase them for himself or for his individual advantage. It has been held by the highest authority that one who is a director of a corporation is not by reason of that mere fact, under all circumstances, precluded from purchasing, holding and enforcing a valid claim against such corporation. But this proposition has no legitimate application to the case before us. Here Kroegher, when he took legal title to the mortgages and paid for them, was not only a director, but a representative or agent of the company, clothed by the resolution of the board of directors of January 21, 1897, with an express trust, voluntarily assumed by him, to make financial arrangements "for the purchase of the Taylor and McArthur and other claims against this company." While as director merely of the company he was an agent, rather than a trustee, in a technical or strict sense, on the facts disclosed he was clothed with a superadded character of trustee. The resolution was adopted for the benefit of the company, and not to enable Kroegher to secure for himself personal profit at the expense of the company or in fraud of its creditors and stockholders. In purchasing and taking title to the mortgages, whatever may have been his intention or understanding, he must be held by a court of equity to have acted not merely as director but strictly as agent and trustee; and the relinquishment by the assignors of a portion of their claims against the company by the procurement of Kroegher did not furnish any ground on which he could base a valid claim against the company for the portion of the indebtedness so relinquished. The language employed by Mr. Justice Field in delivering the opinion of the Supreme court in Wardell v. Railroad Co., 103 U. S. 651, 26 L. Ed. 509, is peculiarly apt in this connection. He said:

"It is among the rudiments of the law that the same person cannot act for himself and at the same time, with respect to the same matter, as the agent of another whose interests are conflicting. * * * The law, therefore,

will always condemn the transactions of a party on his own behalf when, in respect to the matter concerned, he is the agent of others, and will relieve against them whenever their enforcement is seasonably resisted. Directors of corporations, and all persons who stand in a fiduciary relation to other parties, and are clothed with power to act for them, are subject to this rule; they are not permitted to occupy a position which will conflict with the interest of parties they represent and are bound to protect. They cannot, as agents or trustees, enter into or authorize contracts on behalf of those for whom they are appointed to act, and then personally participate in the benefits."

This is not the case of a trustee to sell, purchasing on his own account the subject matter of the trust. There the transaction is voidable in equity, and will be set aside on seasonable objection taken by the proper party. This is a much stronger case. It is the case of a trustee for a corporation, empowered to adjust and compromise claims against it, who seeks to secure for himself the amount of the reduction involved in such adjustment or compromise. It discloses an attempted appropriation by the trustee, for his own personal use, of the precise thing which as trustee he was bound to secure for the benefit of the company. The fact that it may have been advantageous to the company to have the mortgage claims in friendly hands could not justify an assertion by Kroegher of any right to the amount of the reduction. That he should be friendly to the company of which he was a director was to be expected; but his friendliness could afford no excuse for failure by him as trustee fully and faithfully to observe and secure the interests of the company in the matters committed to him. It is contended, however, that the directors and stockholders of the company, after the assignment to Kroegher of the two mortgages in February, 1897, recognized a right on his part to receive on his own account not only what he paid for them out of his own funds but the excess of the whole unpaid indebtedness of the company thereon over and above the amount so paid by him. The recognition of a right implies its existence. If an asserted right be nonexistent, mere recognition cannot convert it into an actuality. Something more is necessary to produce such a result. It is true that Kroegher's testimony and certain book entries and documentary evidence in the case tend to show an understanding or intention on the part of the directors and stockholders of the company, after he had acquired title to the mortgages, that he had or should have a right such as he now asserts. But the evidence does not disclose any facts on which under established principles of law or equity such understanding or intention, if it was entertained, could be held compulsory on the company to confer such a right or to estop the company from denying its existence. On the assumption that the company had authority, as against its creditors, voluntarily to dispose of a portion of its assets to Kroegher,—a point we do not now decide,—it made no such disposition. What Kroegher now claims was not the subject matter of a gift by the company; for there was no delivery. Nor was there any contract on sufficient consideration between the company and Kroegher creating any such right as he now asserts. Nor has the doctrine of ratification any application in this connection. It is further contended on the part of Kroegher that the Nevada

decree or judgment obtained by him on the mortgages in October, 1898, conclusively established his right to receive on his own account the full amount of the principal and interest included therein. This contention clearly cannot be sustained. While that decree or judgment conclusively ascertained the amount of the unpaid indebtedness of the company on the mortgages and established the right of Kroegher to recover the same, it did not determine the capacity in which he should hold or dispose of the decree or judgment or its proceeds. He recovered on the strength of his legal title. No question of his fiduciary relation to the company was raised or entered into the case. The fact that he recovered in his own name and ostensibly in his individual capacity was in nowise inconsistent with the obligation resting on him to deal with the judgment or decree as trustee for the company. Had its property been purchased at a judicial sale under the judgment or decree by a third person at a price exceeding the costs and the sums paid by Kroegher for the mortgages with interest on his expenditure, and had the purchase money been received by him, it would have been his duty and he would have been liable as trustee to account to the company for the amount of the excess. Nor were his rights growing out of his purchase of the mortgages or his recovery thereon in any manner enlarged, save as to the amount of costs and expenses, through his taking title to the ranch at sheriff's sale in August, 1899. He acquired such title as trustee for the company, and without the payment of any consideration, aside from costs and expenses for which he has received credit. The property held by him in trust for the company having, pursuant to the interlocutory decree of the court below, been transferred to the receiver, Kroegher, so far as the mortgages and proceedings thereon are concerned, is entitled, aside from interest, to receive only the sums paid by him as purchase money and to be reimbursed for the amount of his expenditures by way of costs and expenses. The fifth and ninth assignments of error, and also the sixth, based on the disallowance to him of "the full amount of the Taylor and McArthur mortgages, as adjudicated by the courts of Nevada", must, therefore, be overruled.

Another important question on Kroegher's appeal is presented by the first and eighth assignments of error. It is sufficient to refer to the latter, which is as follows:

"Eighth. The Court erred in not sustaining the seventh exception filed to the report of the Master, said exception being as follows, to wit:
'Seventh. The Master erred in allowing the Calivada Colonization Company a credit of $1,500 for an alleged balance of subscription to capital stock of the company.'"

Kroegher subscribed and received certificates for 2,000 shares of the capital stock of the company of the par value of $1 each, and for them paid only $500. No consideration whatever moved from him for the remaining seventy five per cent. of their par value. The sum of $1,500 representing the unpaid amount of his subscription "went", in the language of the witness Agnew, the secretary of the company, "into profit and loss under the guise of a stock commission." Unpaid balances of subscriptions to capital stock of a corporation constitute a trust fund for the payment of claims of its cred-

itors. The statutes of Colorado provide with respect to stock of corporations, among other things, as follows:

"Subscriptions therefor shall be made payable to the corporation, and shall be payable in such installments and at such time or times as shall be determined by the directors or trustees; and an action may be maintained in the name of the corporation to recover any installment which shall remain due and unpaid for the period of twenty days after personal demand therefor, or, in case where personal demand is not made within thirty days after a written or printed demand has been deposited in the post-office, properly addressed to the post-office address of such delinquent stockholder."

It appears there was no demand or call made by the directors of the company on Kroegher for the unpaid balance of his subscription. But whatever may be the force of the above provision as between a solvent corporation and a delinquent stockholder, it has no application as between such a stockholder and the receiver of an insolvent corporation. The court which has jurisdiction of an insolvent corporation and has appointed a receiver therefor has full power to enforce the collection of all unpaid stock subscriptions without any previous call or demand by directors or trustees. In Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220, which involved the validity of an order in bankruptcy proceedings against a corporation for the payment to the assignee of amounts unpaid on its capital stock, Mr. Justice Swayne delivering the opinion of the court said:

"It was competent for the court to order payment of the stock, as the directors under the instruction of a majority of the stockholders might, before the decree in bankruptcy, have done. The former is as effectual as the latter would have been. It may, perhaps, be well doubted whether the stockholders would have voluntarily imposed such a burden upon themselves. The law does not permit the rights of creditors to be subjected to such a test. It would be contrary to the plainest principles of reason and justice to make payment by the debtor for such a purpose in anywise dependent upon his own choice. A court of equity has often made and enforced the requisite order in such cases. The Bankrupt Court possessed the same power in the case in hand. The order rests upon a solid foundation of reason and authority."

And in Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, Mr. Justice Woods delivering the opinion of the court said:

"It is well settled that when stock is subscribed to be paid upon call of the company, and the company refuses or neglects to make the call, a court of equity may itself make the call, if the interests of the creditors require it. The court will do what it is the duty of the company to do. * * * But under such circumstances, before there is any obligation upon the stockholders to pay without an assessment and call by the company, there must be some order of a court of competent jurisdiction, or, at the very least, some authorized demand upon him for payment."

The court below, in the suit of Rapp against the Calivada Colonization Company, having adjudged that company to be insolvent and appointed Hays, one of the appellants here, receiver, made March 31, 1900, on his petition for the collection of unpaid subscriptions, an order of reference to a special master to ascertain and report the facts and "if necessary state an account of assets and liabilities of said company." Pursuant to this order of reference the special master filed his report June 30, 1900, and the court having considered the same ordered July 3, 1900, that an assessment be made on the stock-

holders for the full balance of their unpaid subscriptions. The court had competent jurisdiction in the premises and its action, taken for the benefit of the creditors of the company, established an obligation on the part of Kroegher to pay to the receiver, who represented its creditors as well as its stockholders, $1,500, the amount unpaid on his stock subscription.

But it is contended on the part of Kroegher that the reference to the master on the petition filed by the receiver, was "to adjudicate the amount due by the company to Kroegher", and that the allowance of the credit of $1,500 on account of his stock subscription was outside the scope of the reference, and, further, that such credit was not properly the subject matter of a setoff against the indebtedness of the company to him. The learned judge below held that the allowance of the credit was by fair implication within the scope of the reference. The authority of the master under the interlocutory decree was, among other things, to ascertain "all the indebtedness of every nature and kind of the said Calivada Colonization Company to the said W. C. Kroegher, together with interest thereon to the date of the payment." Neither the petition nor the answer contained any statement that Kroegher's stock subscription had or had not been fully paid, nor any allusion to the matter. The pleadings disclosed nothing to notify Kroegher that it was sought to charge him with the whole or any portion of the unpaid amount of his subscription. It was an independent item of indebtedness, which did not become collectible and had not even been ascertained until after the reference to the master. Under these circumstances we are not prepared to hold that its allowance as a credit was within the scope of the reference. But it was ascertained and became collectible before final decree was made. Whether or not it was the subject matter of a setoff in its technical sense is, under the circumstances, an immaterial inquiry. It was due and payable to the receiver who, as before stated, represents both creditors and stockholders. It would be in the highest degree inequitable and a perversion of justice to permit Kroegher to obtain from the receiver out of the assets of the company the full amount of his claim against it, without paying to the receiver as part of its assets pledged for the security of its creditors the amount of his indebtedness for stock. To require the receiver to pay to Kroegher the whole of his claim and afterwards to bring an independent suit against him for the collection of the balance of his subscription would produce circuity of action without any necessity for such a course, and involve peril of loss to the creditors of the company. We think there was no error in deducting from the indebtedness of the company to Kroegher the balance of his stock subscription in the form of a credit.

The fourth and seventh assignments of error on Kroegher's appeal relate to the disallowance of sums claimed by him on account of certain alleged services and travelling expenses rendered and incurred by him while acting for the company. These items were rejected by the master on the facts as found by him, and his action was approved and confirmed by the court below. We perceive no reason for disturbing this finding.

The second and third assignments are based on the disallowance of two sums claimed by Kroegher, aggregating $350, for expenditures made by him for the benefit of the ranch while in his charge after the sheriff's sale in August, 1899. Of the above amount Kroegher paid $25 for trees, and the remaining $325 for the working and management of the ranch. He has never been reimbursed in whole or in part for these two expenditures, nor received any money or profit from the ranch, and on the uncontradicted evidence he has a just claim for their amount. The master did not pass on the merits of the claim, but disposed of it by the following statement:

"Claimant testifies to a payment of $325 while in possession of the ranch after the last sheriff's sale. This item is omitted from this account under the exception in the decree of February 10th, 1900; also the item of $25.00 paid for trees at the same time."

Nor did the learned judge in his opinion pass upon the merits of the claim or allude to it; but in the final decree it is referred to as follows:

"Third. That there has not been included in this adjudication the claim of W. C. Kroegher for cash advanced at the ranch amounting to about Three hundred and twenty-five ($325) Dollars, and for trees furnished to the ranch amounting to about Twenty-five ($25) Dollars, which items are excluded from this decree."

We are unable to concur in the view of the master that the consideration and adjudication of the claim were precluded by what he terms an exception in the interlocutory decree. An examination of that decree shows that the "exception" was only intended to save the accounting therein ordered from the operation of the provision that "upon delivery of said assignment and the surrender of possession, all liability of the said Kroegher to said Company for an accounting as to his management of the ranch shall cease." We think his claim should have been allowed on any adjudication of "all the indebtedness of every nature and kind of the said Calivada Colonization Company to the said W. C. Kroegher", or of "any advances made by the said W. C. Kroegher of moneys used in and about the operation, care and management of the ranch and store of the company in Nevada." The second and third assignments on Kroegher's appeal must, therefore, be sustained.

The assignments of error on the receiver's appeal do not require much discussion. We shall briefly consider them in their inverse order. The fourth assignment alleges error in the allowance to Kroegher of "any interest upon the principal debt". The evidence does not show fraud or mala fides on his part. It is true that while acting for the company he insisted on collecting from it on account of his purchase of the two mortgages more than he paid for them. But under the circumstances disclosed in the case it is quite likely he believed that in so doing he was only asserting a right possessed by him. He was advised that he had such a right, and certain entries in the books of the company gave some color to his asserted claim. The fourth assignment cannot be sustained. The second and third assignments are based on the allowance of interest at the rate of eight per cent. per annum on the principal indebtedness of the company to Kroegher. But the evidence shows that it was fairly under-

stood and agreed between the company and Kroegher that he should receive that rate of interest on its indebtedness to him for his expenditures and services on its behalf in connection with its ranch in Nevada. The fact that such agreement was had in Pennsylvania where interest is limited to six per cent. did not affect its validity, unless it was made with the intention and as the means of evading the Pennsylvania statute; and of this there is no evidence. The company, a Colorado corporation, in good faith and with reference to the laws of Nevada, agreed to pay him eight per cent. on its indebtedness to him for advances, expenditures and services made and rendered or to be made and rendered, by him, not in Pennsylvania, but where such a rate was allowable. Such rate of interest is permissible in both Colorado and Nevada. We cannot assume, in the absence of evidence, that the "place of performance" was in Pennsylvania, and not in Colorado, the home of the company, or in Nevada, where the company's property was situated on account of which the advances, expenditures and services were made and rendered. Under these circumstances the second and third assignments must be overruled. The first assignment is that the "Court erred in dismissing the exceptions filed in behalf of the Receiver to the Master's report." This assignment is too general, and, further, we have failed to find anything to support it. It is, therefore, overruled.

Our conclusion on the whole case is that the appeal of the receiver must be dismissed; that the appeal of Kroegher must be sustained on the second and third assignments of error, and dismissed as to all other assignments; that the decree of the court below must be modified by increasing the amount awarded to Kroegher by the sum of $350, together with interest thereon at the rate of eight per cent. per annum; that, subject to such modification, the decree should in all respects be affirmed; and that the costs on both appeals should be paid by the receiver. And it is so ordered.