PROGRESO FINANCIERO, INC., demandante y apelado, *v.* MARÍA LIBERTAD GÓMEZ, demandada y apelante.

Núm. 7742.—*Sometido:* Mayo 2, 1939. *Resuelto:* Enero 10, 1940.

*Susoni & Soltero,* abogados de la apelante; *Horacio Franceschi* y *Rafael Pastor,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Se trata de un recurso de apelación interpuesto contra una sentencia dictada a favor del demandante por la Corte de Distrito de San Juan en un pleito en cobro de pagaré. Los hechos son los siguientes:

La demandante es una corporación bancaria. En su Registro de Acciones aparece un asiento fechado el 18 de febrero de 1929, según el cual la demandada se suscribió en dicho día a 25 acciones con un valor a la par de $100 cada una, y se le cargó en cuenta el valor total de $2,500. En junio 19, 1929, ella pagó $500 en efectivo. Se le acreditó en cuenta esta cantidad y se le expidió un certificado por las acciones 101 al 105. El reglamento del banco provee que los directores deben ser dueños de cinco acciones por lo menos. La demandada admitió que ella había pagado esas cinco acciones para poder ser miembro de la Junta Directiva. El banco inició sus negocios el 15 de julio de 1929. La demandada pasó a ser miembro de la Junta Directiva y Tesorera de la corporación en dicho día, o, según su declaración, en 16 de julio de 1929, siendo a la vez designada Cajera del banco. El certificado correspondiente a las cinco acciones permaneció en poder del banco en garantía del fiel desempeño de sus deberes como Tesorera. En septiembre 3 la demandada otorgó un pagaré por $500, cantidad que le fué debidamente acreditada en cuenta, y el saldo en descubierto era y es, $1,500. Este pagaré venció el 15 de septiembre de 1930; fué renovado en dicho día mediante el otorgamiento de un

nuevo pagaré que es precisamente el que el demandante trata de cobrar. Este pagaré lee:

"Pagaré a Progreso Financiero, Inc., o a su orden, en esta ciudad de San Juan, P. R., la suma de quinientos dólares ($500.00), para atender al pagaré por acciones vencido hoy por igual cantidad, el día 15 de septiembre de 1931. (Acciones del núm. 106 al 125 inclusive: valor recibido de conformidad.)

"Comprometo todos mis bienes a esta obligación y me someto a cualquier reclamación judicial que fuese necesaria para su cobro, siendo por mi cuenta los gastos que se originen. Este documento no devengará intereses, siempre que sea atendido a su vencimiento. Pueden aceptarse pagos parciales, con prórroga del balance. Si no fuese atendido, devengará intereses a razón del 6% anual.

"(f)  María L. Gómez,
Firma del Accionista.
"(f)  Luis Gómez,
Fiador."

En julio 16, 1931, la demandada cesó como Tesorera y Cajera.

En septiembre 8, 1931, el demandante escribió una carta a la demandada recordándole que el pagaré devengaría intereses a menos que·fuera atendido a su vencimiento. El 14 de septiembre del mismo año la demandada dirigió una carta al demandante solicitando "una prórroga en las mismas condiciones que el documento actual." En septiembre 14, 1932, la demandada escribió nuevamente al demandante solicitando se le prorrogara nuevamente su pagaré de $500 "a cuenta de acciones de la corporación, en la misma forma y condiciones que el documento original". La demanda fué radicada el 16 de junio de 1933, y la demandada fué emplazada el 9 de agosto del mismo año. Ésta dirigió una tercera carta el 14 de septiembre de 1933 en la que decía: "Atendiendo las condiciones del pagaré por $500 que tengo en esa institución, a cuenta de acciones, por la presente solicito la prórroga en las mismas condiciones que el documento original".

En la demanda se solicita sentencia contra la demandada, por la suma de $500 de principal, más intereses al 6 por

ciento anual desde el 15 de septiembre de 1931, hasta el 31 de mayo de 1933, ascendentes a $49.

La corte inferior llegó a la conclusión de que la demandada votó en juntas de accionistas como dueña de 25 acciones; que se le acreditaron en cuenta los dividendos correspondientes a 25 acciones; que estuvo a cargo de los libros de la corporación por espacio de dos años y nunca trató de enmendar o corregir el asiento en que figuraba ella como suscritora de 25 acciones, de las cuales cinco ya habían sido expedidas y pagadas y 20 no habían sido aún expedidas y a cuenta de las cuales se había otorgado un pagaré por $500.

La posición asumida por la demandada es que ella nunca se suscribió a las 25 acciones; que adquirió 5 que necesitaba tener para ser directora del banco, pero que no se suscribió a las otras 20. Sostiene que el pagaré carece de causa válida (*valid consideration*) por no haber sido dado a cuenta de las 20 acciones, conforme se desprende de su faz, y que por el contrario el mismo fué otorgado a fin de que el Banco pudiera mostrarlo, con otros de igual naturaleza, suscritos por otros directores, al Gobierno de la Capital con la idea de que el municipio depositara fondos públicos en dicho banco; que esto se hizo para que el banco apareciera con mayor capital y para que los pagarés pudieran ofrecerse al Gobierno de la Capital como garantía colateral. Todo esto aparece de la contestación, alegando también la demandada que oralmente se convino entre los directores que los pagarés no serían cobrados a menos que se depositaran los fondos públicos. Al ser examinada como testigo ella manifestó que si se obtenían los depósitos los pagarés serían satisfechos con los dividendos que se obtuvieran de las acciones.

También quedó demostrado que, a instancias del banco, el Tesorero de Puerto Rico convino en que el capital en acciones suscrito no sería incluído en el capital en acciones sujeto a contribución; sino que la contribución se impondría únicamente a las acciones ya pagadas; y que la suma adeudada por concepto de suscripciones de acciones no sería me-

nester incluirla en el capital por acciones sino que podría ser deducida. La suma adeudada por concepto del pagaré fué rebajada por el banco, como capital no pagado. De esto la demandada colige que el banco consideró que el pagaré carecía de todo valor. La corte inferior resolvió que el pagaré fué firmado y entregado en pago parcial de las 20 acciones a que la demandada se había suscrito; que el mismo estaba vencido para dicha fecha y que no estaba sujeto a la condición de que solamente sería cobrado en caso de que se depositaran fondos públicos, que el mismo no fué dado como colateral a corporaciones municipales que fuéran depositantes del banco, conforme alega la contestación, y que dicho pagaré no estaba sujeto a la condición de que sería pagado con dividendos de acciones, según trató de probar la demandada.

La corte inferior dictó sentencia en favor del demandante. La demandada apela y señala seis errores. Los consideraremos en forma similar a como han sido discutidos.

■■ En el primer señalamiento se alega que la corte inferior cometió error al decidir que existía un contrato de suscripción en cuanto a las 20 acciones. La apelante sostiene que un contrato de suscripción de acciones debe constar por escrito porque la palabra "suscribir" significa "escribir" o "firmar".

Conforme sostiene la jurisprudencia, un contrato de suscripción de acciones es similar a cualquier otro contrato. Si existe una causa válida, la conjunción de voluntades y un objeto lícito, el contrato queda perfeccionado. No es necesario que conste por escrito, a menos que la carta constitutiva de la corporación, su reglamento o las leyes del estado así lo requieran.

"En este país la regla es que la suscripción de acciones puede hacerse en la forma en que se otorgan cualesquiera otros contratos, y que todo convenio a virtud del cual una persona muestra la intención de convertirse en accionista, es suficiente para obligarle tanto a ella como a la corporación." *In Re Hannevig,* 10 F. (2d) 941, 945.

Una suscripción de acciones puede inferirse de la conducta de las partes. 1 Thompson on Corporations, pág. 927, párr. 668.

Generalmente se ha resuelto que un contrato de suscripción de acciones puede deducirse de los actos del supuesto suscriptor.

"Cuando no ha habido una suscripción directa, a una persona puede tenérsele como un suscriptor implícito al aceptar las acciones asignádasle y convenir pagar por ellas." *In re L. M. Alleman Hardware Co.,* 172 F. 611.

El segundo señalamiento lee:

"La corte inferior cometió error al considerar que la Presidenta de la demandante estaba autorizada para fijarle fecha y condiciones a la obligación de pago en caso de que existiera un contrato de suscripción de acciones independientemente de la junta directiva de la demandante y de los reglamentos de la misma."

Nada hay que demuestre que tal cosa sucedió o que la corte inferior así lo resolviera. La prueba demuestra que no se requirió de pago a la demandada y que ella otorgó y entregó un pagaré en pago parcial sin requerírsele formalmente que así lo hiciera. La Presidenta del Banco declaró que "se convino que pagaría 500 pesos de contado (el Reglamento dice que tiene que tener cinco acciones pagadas para ser de la directiva) y el balance cuando la Directiva lo fuera pidiendo," y luego de manifestar que la directiva en ningún momento pidió que se hiciera algún pago, continuó diciendo:

"A mí se me ocurrió que en vez de esperar que la Directiva pidiera ese pago, es igual para nosotras firmar un pagaré de 500 pesos para abonar esas acciones, y anualmente pagar esa cantidad sin que la Directiva lo hiciera."

La apelante copia las anteriores aserciones en su alegato (pág. 6) y dice:

"Se ve que no hubo contrato oral. No solamente porque la evidencia sometida no lo demuestra, sino porque no podía haberlo puesto que para perfeccionarse tenía que la Directiva actuar y la

Directiva no actuó nunca. La presidenta no estuvo autorizada nunca por acuerdo de la Junta Directiva para fijarle plazo de vencimiento al pretendido contrato de suscripción de acciones, único modo mediante el cual la apelante venía obligada a satisfacer a su vencimiento el importe representativo de las acciones suscritas.''

Arguye que el contrato no quedó perfeccionado porque la directiva nunca fijó la fecha del vencimiento ni la forma en que se efectuaría el pago. De suerte pues que la teoría de ella es que el contrato no quedaría perfeccionado a menos que se le requiriera de pago. Tal teoría carece de mérito según veremos al hacer algunas consideraciones generales.

La demandada sostiene que ella pagó 5 acciones sin suscribirse a las otras 20. El apelado insiste en que ella se suscribió a 25 acciones. La corte inferior llegó a la conclusión de que al momento de celebrarse el contrato se convino en que la apelante pagaría 5 acciones, que se le expediría un certificado por esas 5 acciones (a fin de que ella pudiera pertenecer a la directiva); y que las otras 20 acciones quedarían como suscritas. Estas acciones quedarían sujetas a la regla corriente en materia de suscripción de acciones.

Por lo general un contrato de suscripción de acciones es uno a virtud del cual una persona se obliga a adquirir un número de acciones de una corporación. Si la corporación ya ha sido organizada, ella le adjudica ciertas acciones a ese suscritor. Desde ese momento el suscritor se convierte en accionista. La práctica general es que al momento de celebrarse el contrato no se hace convenio alguno sobre el día en que se efectuará el pago ni sobre el modo o manera en que se hará el mismo. La Junta Directiva requiere a los suscritores de tiempo en tiempo para que hagan pagos parciales. El contrato queda perfeccionado desde el momento en que la corporación acepta la suscripción y le adjudica las acciones. De lo contrario el contrato no sería exigible. La teoría de la apelante es que el contrato no queda perfeccionado hasta que una de las partes trata de hacerlo cumplir. Esa teoría es absurda.

■ El tercer señalamiento dice:

"Cometió error asimismo la corte inferior al considerar que el pagaré suscrito por la demandada tuvo causa efectiva en ley."

La apelante alega que no hubo contrato de suscripción de acciones y que el pagaré fué uno de garantía (*accomodation note*). El argumento de que el pagaré fué otorgado a fin de ofrecer una colateral al gobierno de la ciudad, ya se ha hecho constar anteriormente en esta opinión.

Todo tiende a la conclusión de que esta condición no existía. El Gobierno de la Ciudad de San Juan en septiembre 17, 1929, o sea dos semanas después de otorgarse el pagaré original, resolvió que los fondos públicos tenían que estar respaldados por garantía colateral y especificó que sólo se aceptarían bonos de los gobiernos federal, insular o municipal; y que únicamente se consideraría el capital pagado en efectivo. Un año más tarde el pagaré que aquí está en controversia fué sustituído por el primero. Año tras año ha sido renovado. En las solicitudes de renovación no se mencionaba condición alguna.

Aun si se hubiera probado la condición, es cuestión a resolver si las cortes hubieran dado validez a la misma.

"Por tanto, ha quedado bien establecido como regla general, que un convenio celebrado entre una corporación y un suscritor particular, según el cual la suscripción de acciones no ha de pagarse o se pagará tan sólo parcialmente, ya sea con el propósito de simular que las acciones ascienden a más . . . o con cualquier otro fin, es ilegal y nulo por ser en fraude de otros accionistas o acreedores, o de ambos, y no es exigible por parte del suscritor, ni puede alegarse como defensa en un pleito sobre suscripción de acciones. . . . En estos casos sólo la estipulación o pacto especial son nulos y no afectan la suscripción de acciones. Las cortes han resuelto que el suscritor es responsable de su suscripción tal cual si no hubiera habido un contrato ilegal, como único medio de impedir fraude y de proteger los otros suscritores y acreedores." 14 C. J. págs. 570, 571, párr. 580. El texto está sostenido por el caso de *Upton* v. *Tribilcock*, 91 U. S. 45.

Pero aun si el pagaré hubiera estado sujeto a una condición válida, las circunstancias expuestas por la apelante tienden a una condición previa (*condition precedent*); a una que haría la suscripción ineficaz hasta que la misma se cumpliera. La apelante no sería suscritora ni accionista hasta que se obtuvieran los fondos de la ciudad. Y quedó establecido el hecho de que la apelante votó como dueña de 25 acciones en asambleas de accionistas; y que se le acreditaron en cuenta los dividendos correspondientes a esas veinticinco acciones. Esta aceptación de su status de accionista parece indicar que si hubiera habido una condición previa la misma fué renunciada.

El cuarto error señalado es así:

"La corte inferior cometió error al considerar probada por el mero asiento en un libro de la corporación la cuenta por Suscripción de Acciones ascendente a la suma de dos mil quinientos dólares a nombre de la demandada sin determinar los factores que justifiquen la existencia jurídica de dicho asiento."

La apelante evidentemente quiere decir que el juez de la corte inferior erró al considerar el contrato probado y no la cuenta. La corte inferior no dictó resolución alguna sobre la cuenta. La cuenta misma no estaba en disputa y el presente no es un procedimiento para recobrar el saldo o parte del mismo. La cuenta fué presentada en evidencia para probar el contrato y para demostrar que el pagaré tenía una causa válida. El peso de las autoridades es contrario a la apelante. Ella sostiene que el hecho de que su nombre figure en el Libro de Acciones de la corporación no es suficiente para probar que ella se suscribió a las acciones. La Corte Suprema de los Estados Unidos dijo:

"Cuando el nombre de un individuo figura como accionista en los libros de acciones de una corporación, la presunción prima facie es que él es dueño de las acciones, en aquellos casos en que nada hay que destruya tal presunción; y en un procedimiento entablado contra esa persona como accionista, a ella incumbe probar que no es

tal accionista, o destruir esa presunción." *Turnbull* v. *Payson*, 95 U. S. 418, 421, y casos citados.

En este caso el demandante no descansó en esa presunción. Se probó que la demandada, por sus actos y por carta, frecuentemente ha ratificado su suscripción de acciones. Ella votó en asambleas de accionistas. Otorgó un pagaré en pago parcial y recibió dividendos que le fueron acreditados en cuenta.

"Un accionista que ha pagado parte de su suscripción de acciones y que figura en la lista de acciones y que ha recibido dividendos, no puede negar que es dueño de acciones." *Sanger* v. *Upton*, 91 U. S. 56; *In re Hannevig*, supra.

Los señalamientos 5 y 6 fueron:

"5.—La corte inferior cometió error asimismo al considerar como un activo del banco el valor de las acciones a que se contrae este litigio, sin tener en cuenta la evidencia presentada al efecto de que dicho valor fué eliminado del activo de la corporación a petición de la propia demandante, después de una vista ante la Junta de Revisión e Igualamiento y una investigación de parte del Gobierno a tal efecto.

"6.—Y finalmente la corte inferior cometió error al resolver el caso contrario a la prueba producida."

En tanto en cuanto resultan específicos son tan sólo una repetición del argumento aducido bajo los señalamientos anteriores y no es menester que les demos consideración especial. El hecho de que no se expidiera certificado alguno carece de importancia.

Más generalmente, en este caso el demandante presentó y probó un documento negociable suscrito por la demandada. Surgió la presunción de la existencia de causa y la demandada dejó de destruir tal presunción.

*Debe confirmarse la sentencia apelada.*