SOBRINOS DE EZQUIAGA, PETITIONERS, *v.* DISTRICT COURT OF SAN JUAN, RESPONDENT.

PETITION for a Writ of Certiorari to the First District Court of San Juan, Hon. Charles E. Foote, Judge.

No. 353.—Decided February 23, 1923.

CORPORATIONS—INSOLVENCY.—When a corporation has not sufficient assets to pay its debts and has suspended business operations, or has taken, or is about to take, steps which practically incapacitate it from carrying out the purpose of the corporation with reasonable prospects of success, or its difficulties

are such that the suspension or failure of its business must soon follow, then such corporation should be declared insolvent.

ID.—ID.—TRUST FUND.—Under the trust-fund theory, which regards the issued capital stock and the assets of a corporation as a trust fund, it is obvious that an order of the court directing the sale of the property of an insolvent corporation, made on motion of the principal shareholders and a majority of the creditors united in a plan of reorganization, is void and can not bind a creditor opposed to such proposed reorganization.

ID.—ID.—FORCED SALE—CONSIDERATION.—A forced sale of the property of a corporation made to a single bidder, who offered common stock and mortgage bonds in payment for the property, is void because of noncompliance with the requirements of section 1348 of the Civil Code regarding the form of the consideration.

The facts are stated in the opinion.

*Mr. F. H. Dexter* for the petitioners.

*Mr. Juan de Guzmán Benítez* for the adverse party.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The petitioners, Sobrinos de Ezquiaga and the Koppel Industrial Car & Equipment Company, filed the present petition for a writ of certiorari praying this court to review the proceedings in an action by the Banco Comercial de Puerto Rico against the Bayaney Central, to vacate the order of the lower court of March 3, 1922, for the sale of all of the property of the defendant and to set aside all of the proceedings in the said lower court subsequent to and by virtue of the said order.

The writ was issued, the petitioner and the Banco Territorial y Agrícola were heard, the other interested parties failing to appear, and the case was submitted for consideration.

In the complaint filed by the Banco Comercial de Puerto Rico it is alleged that on November 18, 1920, a contract was entered into by which the bank advanced to the Bayaney Central, Inc., a certain sum of money to be paid with sugar manufactured by the Bayaney Central, the bank reserving the right to sell the sugar for the account of the Central. The bank alleged that the Bayaney Central failed to perform

the contract and that it was in a condition of partial insolvency. The prayer of the complaint is as follows:

"(1)   That the court order the defendant corporation to comply with each and all of the conditions of the contract of November 18, 1920, and especially with its second and sixth clauses.

"(2)   That a receiver be appointed to take charge of all of the property, real and personal, of the said defendant, the Bayaney Central; to keep, preserve and manage it for the benefit of the plaintiff and all creditors of the Bayaney Central; to secure the plaintiff against loss by the extermination of the liens that the plaintiff now has; to ascertain the debts of the defendant and pay them in accordance with their priority, and in general to adopt all such measures as are customary in cases of this kind."

The record shows that in the course of the proceedings there was presented to the court a reorganization agreement by the principal stockholders of the Bayaney Central and a majority of its creditors, proposing the organization of a new corporation to take over all of the assets of the said Central, to continue its business and to pay its debts, the new corporation so formed being called the Arecibo Sugar Company.

The said reorganization agreement was presented to the lower court for its approval and on March 3, 1922, the said court approved it and ordered the sale of the property of the Bayaney Central, the dispositive part of the said order reading as follows:

"Therefore, the court hereby approves the said agreement as modified in each and all of its parts, the parties thereto being bound to comply with it strictly; and by virtue thereof the court orders the receiver of the Bayaney Central, Inc., to proceed immediately and without any delay with the sale of the properties of the Bayaney Central, Inc., as described in the inventory attached to the record.

"The said sale shall be at public auction and shall be made in the building occupied by this court, the properties to be conveyed to the best bidder after the said sale is approved by this court.

The receiver shall proceed immediately to advertise this sale by the publication of notices in a newspaper of general circulation four consecutive times during fifteen days.''

On March 25, 1922, the sale was·made at public auction and the Arecibo Sugar Company, by its president, made the following bid:

''The Arecibo Sugar Company, Inc., organized in accordance with and to carry out the agreement entered into between the creditors of the Bayaney Central and the said corporation and its stockholders and approved by the First District Court of San Juan, offers at this public sale to take over all of the properties and assume all of the obligations of the said Central for the exact amount of its debts, offering in payment common stock and mortgage bonds in the manner and proportion stipulated in the said agreement.''

The Arecibo Sugar Company's said bid was accepted, although it offered no cash for the purchase of the properties of the Central Bayaney, and on March 30, 1922, the court ordered the receiver to execute a deed of sale and conveyance of all of the property of the said Bayaney Central to the Arecibo. Sugar Company and to render an accounting of his receivership.

In the course of the proceedings the petitioners, by leave of the lower court and with the acquiescence of the attorney for the receiver, filed a complaint in intervention to recover from the Bayaney Central, or out of the funds and property in the possession of the receiver, certain sums of money which represent the value of several lots of fertilizer and railroad materials sold to the Bayaney Central. ·

The petitioners as creditors being then interested parties in the action brought by the bank against the Bayaney Central, they objected to the agreement for the reorganization of the Bayaney Central and moved the court to vacate the order of sale of March 3, 1922, and also to refuse·to approve the sale made at the auction on March 25, 1922.  .

From the allegations of the complaint in the action

brought by the bank it is clear that the action is a personal one for the specific performance of a contract and that the receiver was appointed for the sole and exclusive purpose of preserving the property of the defendant Central and paying its debts. The order for the sale of the defendant's property was not in execution of a judgment in an action of debt and was not justified either by the nature of the action or by the issues tendered in the complaint.

Besides, a public sale under a court's order must be made on the condition that the property offered will be sold to the highest bidder who tenders a fixed sum in cash, inasmuch as the result of the auction is merely a contract of purchase and sale and the vendee must pay money, or its equivalent, for the property, according to the definition of such a contract contained in section 1348 of the Civil Code, which reads as follows:

"Sec. 1348. By a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same."

The question to determine on this point is whether the offer of the only bidder, the Arecibo Sugar Company, to pay for the property with common stock and mortgage bonds complies with the requirements of said section 1348 of the Civil Code as regards the form of payment; or, in other words, whether the securities offered at the sale may be considered as money or its equivalent. We think not. The intention of the legislators in speaking of something that may represent money was to refer to banknotes, checks or drafts, which in all cases represent an obligation to pay money.

"The word 'money' in its strictest sense must be considered as meaning coined money, or cash as it is usually called, or currency.

"Payment is also made in paper money, such as bank notes or commercial paper, all of which represent credits which on a given date must become cash." Scaevola, vol. 23, p. 296.

On the other hand, from the complaint and the proceedings in the lower court which apparently terminated with the order of sale and the sale at auction of all of the property of the Bayaney Central, it is deduced that the said Central was insolvent.

"When a corporation's assets are insufficient for the payment of its debts, and it has ceased to do business, or has taken, or is in the act of taking, a step which will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue, then such corporation must be pronounced insolvent." Fletcher's Encyclopedia of Corporations, sec. 5078, note 71.

On this point the important question raised is whether this case comes under the trust-fund doctrine which considers the capital stock and assets of a corporation as a trust fund for the benefit of its creditors. Under this doctrine, if it is applicable in Porto Rico, it is evident that as the petitioners are creditors of the Bayaney Central and opposed the agreement for the reorganization of the Central, the order of sale of March 3, 1922, is void and without legal force or effect.

"The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it *bona fide* for a valuable consideration

and without notice. It is publicly pledged to those who deal with the corporation, for their security." *Sanger* v. *Upton*, 91 U. S. 56.

"The originator of the trust-fund doctrine was Mr. Justice Story, and the occasion of its incorporation into the jurisprudence of this country, or the initiation thereof, was the decision in Wood v. Dummer, decided in 1824. This was a suit in equity brought by the creditors of a banking corporation, to hold the stockholders of such corporation liable, it appearing that the greater part of the capital of the corporation had been distributed to the stockholders as dividends, thereby rendering the bank insolvent and leaving the creditors unpaid. Mr. Justice Story announced the doctrine as follows: 'It appears to me very clear upon general principles, as well as the legislative intention, that the capital stock of banks is to be deemed a pledge or trust fund for the payment of the debts contracted by the bank. The public, as well as the legislature, have always supposed this to be a fund appropriated for such purpose. The individual stockholders are not liable for the debts of the bank in their private capacities. The charter relieves them from personal responsibility and substitutes the capital stock in its stead. Credit is universally given to this fund by the public, as the only means of repayment. During the existence of the corporation it is the sole property of the corporation, and can be applied only according to its charter, that is, as a fund for the payment of its debts, upon the security of which it may discount and circulate notes. * * * ' " Fletcher's Encyclopedia of Corporations, sec. 5028.

As said by counsel for the petitioners in their brief, the leading case of *Northern Pacific Ry. Co.* v. *Boyd*, 288 U. S. 482, seems to be entirely applicable to this case and decisive as to the nullity of the order of sale. In that case an unsecured creditor of a railroad corporation attacked under the trust-fund doctrine the validity of a forced sale of the property of the corporation made in pursuance of an agreement for reorganization whereby stock and bonds of another company would be issued to the debtor corporation in consideration of an assignment by the latter to the former of all of its assets.

In that case the Supreme Court of the United States held as follows:

"Corporations, insolvent or financially embarrassed, often find it necessary to scale their debts and readjust stock issues with an agreement to conduct the same business with the same property under a reorganization. This may be done in pursuance of a private contract between bondholders and stockholders. And though the corporate property is thereby transferred to a new company, having the same shareholders, the transaction would be binding between the parties. But, of course, such a transfer by stockholders from themselves to themselves can not defeat the claim of a non-assenting creditor. As against him the sale is void in equity, regardless of the motive with which it was made. * * * There is no difference in principle if the contract of reorganization, instead of being effectuated by private sale, is consummated by a master's deed under a consent decree."

From this point of view the court below was bound by the doctrine mentioned, and, in accordance with the allegations of the petition supported by the return, it had no authority or jurisdiction to make the order of March 3, 1922, for the sale of the property of the defendant, the Bayaney Central.

Furthermore, assuming that the order of sale was within the authority of the court, the defendants ignored the rule governing forced sales to the highest bidder to the effect that the general public must be given every opportunity to participate in such sales and nothing must be done to avoid competition or to hinder the making of the highest bids in money.

For the foregoing reasons the order of sale of March 3, 1922, is set aside, as well as all proceedings in the lower court under the said order.

*Order of sale set aside.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.